[Civ. No. 5952.   Fourth Dist.   Mar. 26, 1959.]

Estate of JOHN J. FORD, Deceased. LOUIS J. FORD, Individually, et al., Appellants, v. LOUIS J. FORD, as Administrator, etc., et al., Respondents.

Stephen F. Gallagher and Burton & Hennessy for Appellants.

McCabe & Schumacher for Respondents.

STONE, J. pro tem.*—John J. Ford wrote his holographic will when he was 94 years of age and died four years later. The will was admitted to probate and during the course of administration the administrators with the will annexed petitioned the court for instructions. The petition asked the court to interpret the will for the reason "that it is necessary that the will be interpreted so that inheritance tax proceedings can be commenced and the estate be put in a condition to be closed." This appeal is taken from the order and decree interpreting the will and directing the distribution of the estate by the administrators.

The will is hand printed and without punctuation, but there is a period or dot after each word. The testator reared three foster children as his own, as stated in his will, and he refers to them as though they were his natural children. No question is raised as to the status of these foster children or their descendants, and all parties to this appeal have regarded them as testator's children. A copy of the hand printed will, omitting the dots after each word, reads as follows:

"LAST WILL AND TESTAMENT

"In the name of God Amen I John J. Ford now of Inglewood Los Angeles Co California and being of sound and disposing mind and not under duress or undue influence of any person do make and declareth is my last will first declare that I am a widore that my wife and I have three foster children that we raised as our own children Louis Ford of Yreka California Will the American Mutual Fund Stock and the G E SORLING T D and the Mentone T D at No 2175 Colton Ave Calif I advise to sell the house and divide as follows Give Edd Mehegan and Elizabeth Mehegan one hundred $100.00 Dollars each no more of this will

"John B Patton and Elaine his wife $250.00 each

"Theresa Kratt Audry Patton $250.00 each

"Eddie Kratt Louie Kratt $250.00 each

"Walter Collins and Marian his wife $150.00 each

"Mrs. W J Caven (illegible) $100.00

"Bill Patton $100.00

"The ballance of the pool divide the children of the two families receiving the same amount as the parents Parents should see that they spend there money wisely and mostly toward there education

"There is money in Peoples Federal Savings and Loan in

*Assigned by Chairman of Judicial Council.

Inglewood Federal Savings a little in the Security First and a little in Bank of America at Placentia

"Anyone contesting this will must be cut off with just five $5.00 dollars

"I John J Ford Declare this
My Last and only Will
Dated December 21/1953"

This matter comes before the court on the question of the proper interpretation of the passage: "The ballance of the pool divide the children of the two families receiving the same amount as the parents Parents should see that they spend there money wisely and mostly toward there education."

The trial court found the words: "the ballance of the pool divide" to be a residuary clause which expressed an intent by the testator to dispose of all of his estate remaining after distribution of the preceding specific bequests. None of the parties find fault with this interpretation of those words, nor does this court. The controversy arises over the interpretation of the words immediately following, and their relation to the residuary clause.

When the testator directs "the ballance of the pool divide" the question arises, among whom is it to be divided? It must be borne in mind that there is no punctuation as a guide, but considering those words to be a complete sentence, the only reasonable construction is that the residue should be divided among those previously named in the will as beneficiaries. Mr. and Mrs. Mehegan must be excepted, of course, as they were specifically denied anything other than the specific bequest to them. If such an interpretation is assumed, the next sentence would read: "The children of the two families receiving the same amount as the parents." This sentence gives the impression of being an afterthought for the purpose of including the children of John Patton and William Patton. The testator apparently realized that all other persons who were the natural objects of his bounty had been previously named in his will to share in his estate, but that he had omitted his great grandchildren. By the addition of this sentence, the great grandchildren shared in the estate along with the others. The trial court found that the words "The ballance of the pool divide the children of the two families receiving the same amount as the parents," did not constitute two separate sentences, but rather one, and that the entire residue should be distributed among his two grandchildren, John Patton and William Patton, their wives and their chil-

dren, who were testator's great grandchildren. This, of course, would exclude the specific legatees, among whom were all of the children and the other grandchildren of the testator. This interpretation of the will does not appear to be justified when reference is made to the other provisions of the document. Testator made a number of specific bequests, all of them small, with the exception of those to his son, Louis Ford. As noted hereinbefore, testator limited his specific bequest to the Mehegans by the words ''each no more of this will.'' This exclusion of the Mehegans evidences an intent that the others named as legatees should share in the residue. Otherwise, there would be no point in adding an exclusionary clause after the Mehegans' special bequest, and not limiting the other legatees to their respective special bequests.

Probate Code, section 102, provides in part: ''The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative, . . .'' To hold that the specific exclusion of the Mehegans does not have reference to the residuary clause would render the expression inoperative and meaningless. The residuary clause standing alone is obviously ambiguous. Reference to the bequest to the Mehegans in another part of the will gives meaning to this otherwise ambiguous language. It is the duty of the court to construe all parts of the will in relation to each other to form one consistent whole. Probate Code, section 103, provides: ''Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.''

Thus, by resort to the specific bequests and the exclusion of only the Mehegans, we get a somewhat meaningful interpretation of the expression, ''the ballance of the pool divide.'' On the other hand, the language, ''the ballance of the pool divide the children of the two families receiving the same amount as the parents,'' is ambiguous and unintelligible, and we find no way to resolve the ambiguity.

The trial court properly resorted to extrinsic evidence in order to determine the intent of the testator. (Prob. Code, § 105; *Estate of Kurtz*, 190 Cal. 146, 149 [210 P. 959].) The evidence disclosed that only William Patton and John Patton had children of school age, although testator's daughter,

Theresa Kratt, had two sets of children, one by her first marriage and another by her second marriage. Hence, the words "Parents should see that they spend there money wisely and mostly toward there education," clearly refer to the great grandchildren of the testator, who are the children of William and John Patton. This interpretation of the meaning of the words "children of the two families" confirms, rather than conflicts with, the interpretation that the testator intended to divide the residue of his estate among all of the specifically named legatees, together with the children of his grandsons, William and John Patton. The children of William and John were added as an afterthought when testator realized that no provision had been made for them. Having thought of them, and realizing their youth, he suggested that their share be used for educational purposes.

The extrinsic evidence does not support an interpretation which would give the entire residue to William Patton and John Patton, their wives and their children, to the exclusion of the others named in the will. The testator had loaned William Patton $1,000 with which to buy a new automobile. William neglected to pay any part of the loan. The old gentleman had developed a wholesome respect for a man's word, as well as a dollar, and William's disregard of the obligation engendered a feeling of hostility toward him, which the testator harbored to the end. There is every reason to conclude that the testator never intended to favor William Patton, his grandson, as against his children. It would also appear, from the extrinsic evidence, that Mrs. Kratt had shared a close relationship with her father since her early childhood. Indeed, he lived with her during his last years. Testator apparently was fond of Mrs. Kratt's twin sons by her second marriage, who lived in the home with her and the testator. The evidence also indicated that the testator enjoyed a deep affection for his son, Louis Ford.

A construction of the residuary clause which would give to William Patton, a grandson, an unusually large share of the residue, and exclude Louis Ford, his son, Mrs. Kratt, his daughter, and Eddie Kratt and Louis Kratt, his grandsons, would be contrary to the extrinsic evidence adduced. We believe Probate Code, sections 102 and 103, together with the extrinsic evidence, support the same interpretation of the will, namely, that the residue should be divided as follows: An equal share to those named as beneficiaries of special bequests in the will, except the Mehegans; that is, one share to Louis Ford,

one share to John B. Patton, one share to Elaine Patton, one share to Theresa Kratt, one share to Audry Patton, one share to Eddie Kratt, one share to Louis Kratt, one share to Walter Collins, one share to Marian Collins, one share to Mrs. W. J. Caven, one share to William Patton, one share to each of the children of William Patton, one share to each of the children of John Patton. This constitutes a division of the residue into 17 shares, as hereinabove specified.

The order and decree appealed from are reversed, with directions to the trial court to enter a decree in accordance with the foregoing.

Griffin, P. J., and Mussell, J., concurred.