226 Cal.App.2d 289 (1964)
Estate of GEORGE EDWARD BARNHART, Deceased. EDWARD J. CUMMINGS, as Executor, etc., et al., Objectors and Appellants,
v.
PATRICIA CHALGREN et al., Claimants and Respondents; STATE OF CALIFORNIA, Claimant and Appellant.
Civ. No. 27796. 
California Court of Appeals. Second Dist., Div. Two. 
April 13, 1964.
 Joslyn & Joslyn, R. B. Joslyn, Hahn & Hahn, William S. Johnstone, Jr., and Loren H. Russell for Objectors and Appellants.
 Stanley Mosk, Attorney General, and Carl Boronkay, Deputy Attorney General, for Claimant and Appellant.
 Holmes, Ross, Woodson, Millard & Ryburn and John W. Holmes for Claimants and Respondents.
 KINCAID, J. pro tem. [fn. *]
 The decedent herein, George Edward Barnhart, died on April 26, 1962, a resident of the County of Los Angeles. Judgment admitting his will to probate and appointing Oscar E. Watson, executor of said will, was filed September 21, 1962. Said will, holographic in form and on one page, reads:
 "I, George Edward Barnhart, being of Sound mind & I believe body, wish to make provision for the disposition of my property, if for any reason God should wish to call me."
 00 from Patricia Chalgren
 "1. One payment of $1000 as final settlement, *293 "
 Altadena Pasadena
 the property at 2228 New York Dr/ & 407 & 411 Waldo Ave./
 all books, tools & machinery
 to be deeded to Patricia Chalgren to have and to hold intack/ during her life time then turn it over to the State of California as a museum at 2228 New York Dr. plus 100 Shares McCord -
 "2. Joan Pengra - 100 Shares McCord -"
 "3. Imogene Warner 100 Shares U.S. Steel."
 "4. Joanne - Ed - Robert - Wayne - All the Lots as"
 except lot 4 T 7330 -
 of in L.A. County/ which I now own. plus 100 shares of McCord -
 "5. Bill Harris Jr. 100 G. Unilever -"
 "6. Lot 4 T 7330 to Oscar Watson - he to act as trustee for my Estate."
 "7. All residue from any LawSuit [TEXT STRICKEN]-[to be]- 10% to Mr. Oscar Watson & the Balance Equally divided - Mr. Watson to have the full & complete say in all matters. George Edward Barnhart"
 Dec. 30, 1961.""
 In addition to the above, there is written along the left side of said document, "8. Mr. Glenn Ogg 10% of any LawSuit Residue," and along the right side, "10% to Mr. Ogg."
 A petition to determine interests in estate was filed by Patricia Chalgren and Joan Pengra, the daughters and only heirs at law of the decedent. In response to said petition statements of interest were filed by William Harris, as guardian ad litem of William Harris, Jr.; by Oscar E. Watson; by Edward Cummings individually and as guardian of the Estate of Wayne R. Cummings and Robert Cummings and as executor of the Estate of Joanne J. Cummings; and by the State of California.
 Following a court trial findings of fact, conclusions of law and the judgment were filed. A notice of appeal from the judgment was filed by the State of California; by William Harris, in his capacity as guardian ad litem, and by Edward J. Cummings, in his own behalf and in his capacities as guardian and executor.
 The decedent was born in California in 1895 and had a long career as an inventor and engineer, particularly in the field of aviation. Some of his inventions were used by the United States Government during World War II and later he *294 carried on his research in a shed at the rear of his residence 2228 New York Drive, Altadena.
 Decedent and his wife divorced in 1931 and she moved to Minnesota taking the two children, Patricia and Joan, with her. Patricia visited decedent twice and there was extensive communication between them with exchange of gifts. Joan spoke with decedent by telephone upon several occasions, and exchanged some letters with him receiving occasional gifts. She never saw him after the separation in 1931.
 In aid of construction of the intent and meaning of testator's will, extrinsic evidence was offered by various of the parties and received by the trial court without objection. In addition to the foregoing, such evidence showed that decedent and Watson had been longtime friends and business acquaintances. William Harris, Jr., referred to in the will as "Bill," lived next door to the decedent who was fond of him. He had known Imogene Warner since 1939 and they had visited and conversed frequently. The Cummings family consisted of Joanne, Ed, Robert and Wayne, all of whom had known the decedent since 1943, had received substantial gifts from him and had visited him from their home in Chicago on several occasions.
 After receiving the extrinsic evidence the trial court found that as to paragraph 1 of the will the testator intended to devise all of his interest in the real properties located on New York Drive, Altadena and on Waldo Avenue, Pasadena to Patricia; that although the testator intended that some part or all of the real property, books, tools and machinery referred to in paragraph 1 should be turned over to the State of California as a museum after the death of Patricia, the court is unable to ascertain whether said intention related to only part of said property and, if so, to what property, or whether said intention related to the whole of said property. The court then further found that the books, tools and machinery mentioned in paragraph 1 are a part of the residue of the estate and the property at 2228 New York Drive, Altadena, is not and cannot be made physically available for museum use; that the court cannot ascertain what property referred to in paragraph 1 of the will, including books, tools and machinery, the testator intended should be turned over to the State of California as a museum; or what purpose the museum was intended to serve; or who were the beneficiaries thereof; or whether the testator intended Patricia to administer some or all of the property so referred to as a trust; or whether he intended some or all of said property to be *295 administered as a trust only by said estate or by both Patricia and the state. Under paragraph 1 the testator intended to bequeath 100 shares of the stock of McCord Corporation to Patricia.
 As to paragraphs 7 and 8 the court found that testator intended to bequeath to Watson and Ogg each 10 per cent of the net proceeds realized by his estate from any lawsuit but as to any balance remaining the court is unable to ascertain the intention of the testator as to whom he intended to give all or any part thereof; that by his will the testator did not dispose of all or any said balance and all thereof is therefore included in the residue of the estate of said decedent. As to the residue of the estate the court found that it is not disposed of by the will and as to said residue the decedent died intestate.
 The state contends that the trial court erred (1) in failing to construe the meaning of paragraph 1 of the will as giving Patricia Chalgren a life estate only in the real and personal property (excluding the McCord stock) described therein and as giving the state the remainder interest in said property; (2) in failing to construe the language of paragraph 7 of the will disposing of the balance of the net proceeds which are realized by the estate from any lawsuit in equal shares to each of the legatees named in the will, including the state, who were not otherwise given specific shares of such proceeds.
 Appellant Harris contends that in addition to his bequest of stock the court erred in failing to construe paragraph 7 of the will so as to entitle him to a sum equal to 1/10 of all residue from any lawsuit and that the state should be excluded from participation in such residue.
 Appellants Cummings contend that in addition to the bequests to them specified in paragraph 4 of the will, they are each entitled to 10 per cent of all residue from any lawsuits, the state to be excluded from participation therein.
 The only existing lawsuit of decedent disclosed by the record herein is an action pending in the United States Court of Claims entitled Barnhart v. The United States, No. 4-59. The inventory and appraisement filed by the executor failed to list this as an asset of the estate but certain of the heirs maintain it has substantial potential value.
 It is the contention of the respondent daughters that, because extrinsic evidence from which claimed conflicting inferences were sought to be drawn was received by the trial *296 court, any findings based upon such evidence are binding upon the reviewing court of appeal. [1] The construction of a will is a question of law but a trial judge or jury may pass upon such issues of fact as are developed by evidence properly received as an aid in the resolution of ambiguities which appear in the will. (Estate of Jones, 55 Cal.2d 531, 536 [11 Cal.Rptr. 574, 360 P.2d 70].) [2] The settled rule is set forth in Estate of Donnellan, 164 Cal. 14, at page 19 [127 P. 166]: "It is a fundamental and indisputable proposition that wherever doubt arises as to the meaning of a will, such doubt is resolved by construction and that construction is one of law -- it is an application of legal rules governing construction either to the will alone or to properly admitted facts to explain what the testator meant by the doubtful language. [3] In those cases where extrinsic evidence is permissible there may be a conflict in the extrinsic evidence itself, in which case the determination of that conflict results in a finding of pure fact. But when the facts are thus found, those facts do not solve the difficulty. They still are to be applied to the written directions of the will for the latter's construction, and that construction still remains a construction at law. [4] In such cases where the evidence of the facts is in conflict, it is permissible for the court or for the jury, to find the facts and those findings, under firmly established principles, will not here be disturbed. [5] But the application to the will itself of the facts found, admitted or established, presents a question of legal construction, which is as purely a question of law as is a construction of the will without resort to extrinsic evidence."
 [6] Extensive evidence was received at the trial including a personal visit to and inspection of the properties by the trial judge. An examination of the record discloses that this evidence is generally without conflict and concerns essentially the relationship of those claiming to be decedent's heirs at law, his regard for them, his regard for the legatees in his will, particulars as to his life and career, his intention, varying from time to time, to benefit different individuals or classes of people, and the identification and nature of various property described in his will. The findings of the trial judge based upon this evidence are not conclusive as to an appellate court but where, as here, doubt arises as to the meaning of the will, the facts adduced should be applied on appeal to the written directions of the will for the latter's construction as a question of law. *297
 Appellants, other than the state, are concerned only with the construction of paragraphs 7 and 8 of the will. Appellant state claims an interest in the estate not only by these paragraphs but also by virtue of the provisions of paragraph 1. We first address our attention to the latter. This paragraph
 00 from Patricia Chalgren
 reads: "One payment of $1000 as final settlement,"
 Altadena Pasadena
 the property at 2228 New York Dr/ & 407 & 411 Waldo Ave./
 all books, tools & machinery
 to be deeded to Patricia Chalgren to have and to hold intack/ during her life time then turn it over to the State of California as a museum at 2228 New York Dr. plus 100 Shares McCord -.""
 The state contends that, contrary to the trial court's findings, paragraph 1 should be construed to the effect that the daughter of decedent Patricia is entitled to a life estate only in the real and personal property mentioned therein and the state is entitled to the unlimited remainder interest thereof with the words "... as a museum at 2228 New York Dr. ..." merely expressing the recommendation or wish that a museum be established, but imposing no legal obligation to do so by way of condition subsequent, trust or otherwise. The state offers no explanation as to the meaning of the first line of this
 00 from Patricia Chalgren
 paragraph: "One payment of $1000 as final settlement..." but concedes the correctness of the court's findings that the last four words of paragraph 1, "... plus 100 Shares McCord-" means that the testator intended an outright gift of such stock to Patricia.
 Section 101 of the Probate Code provides in part: "... A will is to be construed according to the intentions of the testator. Where his intention can not have effect to its full extent, it must have effect as far as possible." Section 104 provides in part: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference ... from other parts of the will. ..."
 [7] The paramount rule in the construction of a will is that the will must be interpreted according to the intention of the testator and that intention must be given effect as far as possible. (Estate of Thompson, 50 Cal.2d 613, 617 [328 P.2d 1].) The real question is, what did the testator mean in view of the language he has used in his will, in the light *298 afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will. (Estate of Axcelrod, 23 Cal.2d 761, 766 [147 P.2d 1]; Estate of Wilson, 184 Cal. 63, 67, 68 [193 P. 581].)
 [8] The words contained in paragraph 1 "... the property"
 Altadena Pasadena
 at 2228 New York Dr/ & 407 & 411 Waldo Ave./ to be deeded to Patricia Chalgren ..." clearly mean a fee simple devise to her unless the prior and subsequent words with equal clarity and distinctness indicate a different result was intended by the testator. (Prob. Code, 104.)"
 [9] The words next following, viz.: "... to have and to hold intack [sic] all books, tools, & machinery during her life time then turn it over to the State of California as a museum ... plus 100 Shares McCord-" can have several different meanings, some of which would import an intention to limit the estate devised to Patricia, and others of which would leave the devise in fee of the real property unaffected.
 Paragraph 1 bears internal evidence of originally having been written to read as follows (omitting interlineations): "1. One payment of $1,000.00 as final settlement, the property at 2228 New York Dr. & 407 & 411 Waldo Ave. to be deeded to Patricia Chalgren to have and to hold intack during her life time then turn it over to the State of California as a museum at 2228 New York Dr. plus 100 Shares McCord-."
 Several ambiguities immediately appear: (1) How could these widely separated properties, one in Altadena, the other in Pasadena, be a museum "at 2228 New York Drive" (2) Was it intended that Patricia devote these properties to some kind of museum use during her lifetime so that she could literally "turn it over to the State of California as a museum" upon her death, or was it intended that Patricia's estate in these properties during her life be unlimited as to use except that they be held intact? (3) What kind of museum was intended? (4) Are the said words intended as a limitation on the estate devised to Patricia, or are they the expression of a command or wish that Patricia establish and maintain said properties as a museum of some kind and give it to the state upon her death? If the beginning and ending words of the paragraph and the interlineations also are considered, the above mentioned uncertainties become compounded. (5) By using the words, "One payment of $1,000.00 from Patricia Chalgren as final settlement," did the testator intend that Patricia should pay $1,000 as a condition *299 precedent to receiving the devise of the two properties, or as a condition subsequent attached to her devised estate therein? Did the testator mean that Patricia was to pay only $1,000 of any outstanding indebtedness for which these properties were security and that the balance, if any, was to be paid by his executor, so that Patricia would receive an unencumbered title? (6) Did the addition of the interlined words, "all books, tools & machinery," mean that testator intended Patricia to hold intact not only the two parcels of real estate, but also to hold intact said items of personal property, and if so, were they to be held intact as part of a museum presently, or in anticipation of some museum to be instituted after the death of Patricia? (7) Was the insertion of the interlined words, "all books, tools & machinery," intended by the testator to modify the original and ambiguous concept of devoting two unrelated parcels of real estate to a museum at only a single location by limiting the museum concept to his books, tools and machinery? (8) Did the testator intend that Patricia should have a gift from him of "100 Shares McCord," or did he intend that she have a life estate in 100 shares of McCord stock, the remainder interest to be an endowment of the museum, or did he intend a gift of McCord stock to the state? If so, did he intend a present gift of said stock or a future gift of stock when the real properties were turned over to the state at Patricia's death?
 The evidence shows that the testator was particularly fond of his daughter Patricia. A steady correspondence was maintained between them. In a letter written to her some 11 months before his will was executed he told her he loved her and that he thought she was wonderful.
 It seems unlikely that this testator, so demonstrably concerned for his child's welfare, would intend to leave her a heavily mortgaged life estate in these properties and charge her with the duty of holding them intact, paying the taxes and upkeep on them, the interest on heavy loans, devoting them and any income from them to maintenance of some kind of a museum and requiring his daughter to pay $1,000 for the privilege of receiving such an inheritance. The record shows that at the time the will was executed there was an encumbrance against the New York Drive property of $1,407.88, one against the property at 407 Waldo Avenue of $8,855.82 and against the 411 Waldo Avenue property of $17,531.10. A construction applied to this first section of the will requiring Patricia to assume payment of any part of the *300 outstanding trust deed indebtedness against the properties devised would be inconsistent with the obligation normally borne by life tenants who usually are required to pay only the interest on secured debts. (Boggs v. Boggs, 63 Cal.App.2d 576, 580 [147 P.2d 116]; 31 C.J.S., Estates, 48, p. 63.)
 The trial court was entitled to accept and give effect to that which was a clear and distinct devise to Patricia and to reject those other provisions which are unclear. In Estate of Collias, 37 Cal.2d 587 [233 P.2d 554], the will provided that all the residue of the estate was bequeathed to a nephew. A sentence followed: "It is my desire and wish that my nephew ... will give half of my estate to my nearest relative heir in Greece. ..." The court held that no trust was created by the will. By the first sentence the entire estate is bequeathed outright and unconditionally to the nephew. The desire and wish which followed were addressed to the devisee and not to the executor. The "desire and wish" provision is not equally clear and distinct as the provision preceding it and, applying the rule stated in section 104 of the Probate Code and resolving any doubt suggested by the subsequent words in favor of the estate first conveyed it cannot be said that a trust or equitable charge was created which limits the absolute bequest to the nephew.
 A somewhat similar situation is found in Estate of Marti, 132 Cal. 666, 671 [61 P. 964, 64 P. 1071]. There the court said: "While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not, when addressed to his legatee, be construed as a limitation upon the estate or interest which he has given to him in absolute terms." In our instant case the direction of the testator to "then turn it over" is addressed to the devisee Patricia and not to the executor.
 In Estate of Kearns, 36 Cal.2d 531 [225 P.2d 218], a will, following a specific bequest of property, contained a subsequent clause: "I hereby direct my Executor ... to provide for any other kin. ..." At p. 537 the court said: "It is apparent from the foregoing discussion that clause 5 of the will is not on its face equally as clear as the provision in clause 1, and accordingly, in view of section 104 of the Probate Code, it cannot be said that a trust or equitable charge has been created which would limit the absolute bequest to respondent unless the intent of the testator to do so can be shown by extrinsic evidence. Section 104 must be read with section 105 of the Probate Code which provides that 'when an uncertainty arises upon the face of a will, as to the application *301 of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding ... oral declarations' of the testator as to his intentions. As we have seen there is an uncertainty upon the face of the will as to the application of clause 5, which contains language having both mandatory and precatory implications, and evidence of the circumstances under which the will was made was therefore admissible. In cases involving a similar problem it has been said that the trier of fact may consider such matters as the size of the estate, the property involved in the gift, the circumstances of the parties, and their relation to each other and to the testator." To like effect is Estate of Richards, 154 Cal. 478, 492 [98 P. 528].
 [10] The language of paragraph 1 of the will does not create a life estate in Patricia Chalgren with remainder to the State of California, but, instead, declares that full ownership is bequeathed to her without limitation, the words following having the effect of a precatory recommendation of the testator to his devisee that, upon her death, she is then to turn it over to the state as a museum. This is the only reading of paragraph 1 that allows Patricia to fulfill the active, dispositive role enjoined upon her by the words "... the property ... to Patricia Chalgren to have and to hold ... during her life time then turn it over. ..." These quoted words, read in their ordinary grammatical sense (Prob. Code, 106), vest in Patricia Chalgren the power to do the act which would "turn over," i.e., dispose of the property upon her death. They are not consistent with the contention that the testator was presently making a gift of a remainder interest for if this were so Patricia could not carry out her declared function of disposing of the property upon her subsequent death.
 [11] Since the testator also directed that all his "books, tools & machinery" be likewise held by Patricia during her lifetime then turned over to the state, they too are part of the devise to her subject only to his recommendation that they likewise be turned over upon her death. Finding number VI, that the books, tools and machinery are a part of the residue of the estate of decedent is disapproved. [12] The finding that the testator intended to bequeath 100 shares of McCord Corporation stock to Patricia is approved. Other than as herein modified the findings of the trial court as to paragraph 1 of the will are approved. *302
 [13] As to paragraphs 7 and 8 of the will the trial court properly found that the testator intended to bequeath to Oscar E. Watson and Glenn Ogg 10 per cent each of the net proceeds realized by the estate of the testator from any lawsuit. Finding number XIX, that the court cannot ascertain whether the testator intended to dispose by his will of all or any of the balance of the net proceeds realized by his estate from any lawsuit, or to whom the testator intended to give all or any part of said balance, but the testator did not dispose of all or any of said balance by his will, and all of said balance is included in the residue of the estate of said decedent, is disapproved.
 Paragraphs 7 and 8 read: "7. All residue from any LawSuit [TEXT STRICKEN]-[to]- [TEXT STRICKEN]-[be]- 10% to Mr. Oscar Watson & the Balance Equally divided - Mr. Watson to have the full & complete say in all matters." "8. Mr. Glenn Ogg 10% of any LawSuit Residue." In addition to the above there is written along the right side "10% to Mr. Ogg."
 [14] Among whom did the testator intend to equally divide the 80 per cent balance of all residue from any lawsuit in addition to the 20 per cent specifically bequeathed to Watson and Ogg? The will is specific as to those whom the testator wished to make the objects of his bounty. Ten persons are named as such objects. At the end portion of his will, after previously naming the eight devisees and legatees Patricia, Joan, Imogene Warner, Joanne, Ed, Robert and Wayne Cummings, and Harris, he provided for Watson 10 per cent and then Ogg, 10 per cent of all residue from any lawsuit, followed by the final expression "... & the Balance Equally divided. ..."
 The conclusion of the court that these words are so uncertain as to the intent of the testator as to preclude a determination as to whom were the intended legatees is violative of not only section 101 of the Probate Code heretofore quoted but also section 102 thereof: "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." The ambiguous clause should likewise be construed in the light of section 103 of said code, as follows: "Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to *303 form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail."
 A somewhat analogous situation was presented in Estate of Ford, 169 Cal.App.2d 174 [336 P.2d 981]. The testator there provided in a holographic will, after making pecuniary bequests to different persons in different amounts, that "The Ballance [sic] of the pool divide the children of the two families receiving the same amount as the parents Parents should see that they spend there [sic] money wisely and mostly toward there [sic] education." (P. 175.) The court said: "When the testator directs 'the ballance of the pool divide' the question arises, among whom is to be divided? ... [C]onsidering those words to be a complete sentence, the only reasonable construction is that the residue should be divided among those previously named in the will as beneficiaries." (P. 176.)
 In Estate of Akeley, 35 Cal.2d 26, 28, 29 [215 P.2d 921, 17 A.L.R.2d 647], the testratrix by holographic will gave "... all the rest, residue and remainder of my estate ..." 25 per cent to each of three charities. The State of California contended that by virtue of the language of the will a finding is required that the testatrix failed to dispose of one-fourth of the residue of her estate which therefore is distributable to it as escheated property. In upholding the trial court that each charity was entitled to take one-third of the residue the court said: "The controlling rule is stated in section 101 of the Probate Code which provides that a will is to be construed according to the intention of the testator. All other rules of construction are subordinate to this cardinal rule and in its application presumptions are to be indulged which will prevent entire or partial intestacy. ..."
 "Words denoting percentages have a technical meaning and '25 per cent' mathematiccally equals one-fourth of the whole. The attorney general assumes that the probate court was bound by the mathematical percentages specified by the testatrix and that the use of any other language could not be deemed to create ambiguity with the specified percentages. However, there is no rule of construction which would prevent the court from applying the language of a will in accordance with the manifest intention of the testatrix even though to do so would require an interpretation not in accord with the technical meaning of words used. On the contrary it is the duty of the court so to construe the language that it will conform to the testatrix' intention as disclosed by the *304 will rather than to defeat such intention by strict adherence to the technical sense of particular words. Especially in cases where the will is not drawn by an attorney words which are repugnant to the clear intention disclosed by other parts of the instrument may be regarded as surplusage or restricted in application since to do otherwise would be to defeat the intention. [Citation.]" To the same effect, Estate of Blalock, 95 Cal.App.2d 463 [213 P.2d 100]; and Estate of Wilson, 184 Cal. 63 [193 P. 581].
 [15] From both the evidence and the provisions of the entire will it seems clear that the testator intended the balance of 80 per cent of all residue from any lawsuit to be divided equally among those eight persons previously mentioned in the will. It does not appear to be a reasonable construction to include the State of California as a participant in such "Balance." Neither the will nor the extrinsic evidence shows testamentary intent to include the state. The state's interest under the will is in the nature of a possible future interest limited in purpose by virtue of the language of the will.
 [16] The will does not contain any general residuary clause. Paragraphs 7 and 8 provide for the balance of all residue from any lawsuit to be equally divided and this residue is limited to that particular portion of the estate of decedent. [17] As pointed out in Estate of Beldon, 11 Cal.2d 108 [77 P.2d 1052], the making of a will raises the presumption that the testator intended to dispose of all of his property, and residuary clauses are generally inserted for the purpose of making that disposition complete, and these clauses are always to receive a broad and liberal interpretation, with the view of preventing intestacy of any portion of the estate of the testator, which general rule is in harmony with the general declaration of our code, that the provisions of the will must be construed, if possible, so as to effect that purpose. "But there is no room for application of the rule if the testator's language, taken in the light of surrounding circumstances, will not reasonably admit of more than one construction. [18] A court's inquiry in construing a will is limited to ascertaining what the testator meant by the language which was used. [19] If he used language which results in intestacy, and there can be no doubt about the meaning of the language which was used, the court must hold that intestacy was intended. [20] A testator has the right to make a will which does not dispose of all of his property *305 but leaves a residue to pass to his heirs under the law of succession. Such a will is not the usual one but when the language which leads to that result is clear the will must be given effect accordingly." To like effect Estate of Deacon, 172 Cal.App.2d 319, 322 [342 P.2d 261]; Estate of Swallow, 211 Cal.App.2d 359, 362 [27 Cal.Rptr. 235].
 [21] The finding of the court that the residue of the estate of the decedent is not disposed of by his will and as to such residue he died intestate, and the conclusions that his daughters Patricia and Joan are each entitled to one-half thereof are approved.
 The judgment is reversed and the superior court is directed to enter a new judgment in conformance with the views herein expressed.
 Herndon, Acting P. J., and Roth, J., concurred.
NOTES
[fn. *] *. Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.