[Civ. No. 33425. Second Dist., Div. Five. May 12, 1969.]

Estate of GEORGE EDWARD BARNHART, Deceased. PATRICIA (CHALGREN) BABCOCK, Petitioner and Appellant, v. OSCAR E. WATSON et al., Objectors and Respondents.

Ross, Woodson, Millard, Ryburn & Burke and Kenneth A. Millard for Petitioner and Appellant.

Joslyn & Joslyn and R. B. Joslyn for Objectors and Respondents.

REPPY, J.—This is an appeal by Patricia (Chalgren) Babcock (hereinafter, Patricia), daughter of the deceased, George Edward Barnhart (hereinafter, decedent), and proposed distributee of his estate, from an order[1] settling the

---

[1] The order appealed from was a minute order reading ''Final Account *approved* in accordance to [*sic*] the Memorandum Decision filed this date.'' (Italics added.) The memorandum states that ''The *objections* will be overruled and the accounting will be approved as filed.'' (Italics added.) Probate Code sections 926 and 931 use the term ''settle'' in describing the action of the probate judge with respect to the account. It is clear that the probate judge in this case intended to settle

third and final account[2] after the overruling of exceptions to the account and petition for distribution, which had been filed by Patricia. The respondents named in the appeal are the other proposed distributees except Joan Pengra (hereinafter, Joan), the other daughter of the deceased.[3]

The exceptions to the final account filed in the probate court appear in an original and in a supplemental document. They are as follows:

(1) That there are improperly charged against Patricia payments of principal and interest on loans secured by the real property devised to her totalling $30,897.45 (this is made up of $1,197.30 principal and interest paid against the encumbrance on the New York Drive property, $8,070 principal and interest paid against the encumbrance on the Waldo Avenue property and $21,630.15 being the amount of the encumbrance assumed by the buyer of the Waldo Avenue property which was sold during probate).

the account. Probate Code section 927 refers to ''exceptions'' to the account. The word ''objections'' has the same practical significance. (*Estate of McMillin*, 46 Cal.2d 121, 128 [292 P.2d 881, 56 A.L.R.2d 1175]; *Estate of Pardue*, 57 Cal.App.2d 918, 920 [135 P.2d 394].) Although there is authority that no appeal lies from a skeleton minute order omitting essentials (*Estate of Dwyer*, 168 Cal.App.2d 264 [335 P.2d 718]), and the minute order in the instant matter is somewhat skeletal, we feel that read in light of the memorandum decision it is adequate to ground this appeal. Moreover, respondents have registered no objections in this regard.

[2]The combined documents filed by the executor (report and third and final account, petition for fees and commissions and petition for distribution) contain a schedule H denominated ''Distribution Schedule'' which specifies the items to be distributed and the inventoried value thereof (or proceeds therefrom where an item had been sold) less certain items (such as inheritance taxes, shares of administrative expenses, extraordinary fees, taxes and encumbrances) charged against each proposed distribution. No appeal lies from a disallowance of exceptions to a petition for distribution; it would have to be from the decree of distribution. (Prob. Code, § 1240; *Estate of Vai*, 168 Cal.App.2d 147 [335 P.2d 501]; *Estate of O'Neill*, 44 Cal.App.2d 596 [112 P.2d 703].) However, at least the *charges* set out in schedule H can be construed as part of the final account, and an appeal does lie from an order ''settling'' an account. (Prob. Code, § 1240.) Section 921 of the Probate Code states in part as follows: ''[T]he executor . . . must render . . . a verified account showing the amount of money received and expended by him, . . . *and all other matters necessary to show the condition of the estate.*'' (Italics added.) It is considered that showing what charges are being made against the interest of each beneficiary in the estate is within the scope of ''all other matters necessary to show the condition of the estate.''

[3]Although the notice of appeal originally was directed also to the State of California, the state is not a proposed distributee, its possible status as a remainder-devisee having been ruled out by a prior appellate decision. (*Estate of Barnhart*, 226 Cal.App.2d 289 [37 Cal.Rptr. 909].) Thus, appellant does not pursue that aspect of her notice.

(2) That said charges should be made against the entire estate.[4]

(3) That an order directing the executor to distribute one $1,000 Unilever bond to William Harris, Jr., would require the executor to buy one (necessitating further pro rata charges against each distributee's share of the estate) because the two Unilever bonds inventoried were never found and no banking institution would supply an undertaking to file with Unilever in order to get the bonds reissued. At oral argument counsel for Patricia advised this court that this particular objection was being withdrawn. Thus, we forego consideration of any problems in this regard.

▌ In the written documents which were filed by Patricia with the probate court there is no specific exception to 46.70 percent of the unpaid administration expenses[5] being charged against her. Said unpaid expenses are $35,012.44 and 46.70 percent thereof is $16,350.81. However, in her brief, Patricia asserts that this charge is not proper, citing section 752 of the Probate Code; and she urges that this point be considered on appeal. Respondents, in their brief contend that it should not be considered because it was not included within the original exceptions ruled upon by the trial court. It is true that Patricia did not include the costs of administration item in her written exceptions. However, there is indication in the memorandum decision of the trial judge that the question was raised before him (probably orally at the hearing)[6] and that he gave it consideration. He first observed that "In the *Estate of Bobb* [*sic*—correct name is Babb], 200 Cal. 252,[7] the

---

[4]It is felt that by "the entire estate" Patricia means the entire estate other than the real property devised to her which she contends should be exonerated of the debt which it secures.

[5]The federal estate tax is included in the expenses of administration (see *infra*.)

[6]Unfortunately no court reporter was taking down the statements and arguments of counsel at that hearing. This was ascertained when this court made inquiry in contemplation of seeking an augmentation of the record in this regard.

[7]In *Estate of Babb* the testator had willed to his uncle all money·in his bank. This proved to be about $4,000. He had willed to five individuals his interest in another estate. He named two of the five as his residuary legatees. Seventy shares of stock, which were a part of the other estate, were distributed to the testator before he died. Apparently they were sold during the administration of his estate and the proceeds were (improperly, according to the appellate court) distributed to all five instead of only to the two, since .the proceeds were part of the residuary estate. ·The probate court had apportioned the ·expenses of. administration among the several devisees and legatees in proportion to the amount of property which each one of them received. The uncle's portion (about $900) was deducted from his legacy. The uncle appealed from the

expenses of administration were charged against the residuary's shares.'' In a succeeding paragraph he cited *Estate of Traver,* 145 Cal. 508 [78 P. 1058],[8] and remarked, ''In this case the court said that the expenses of administration and debts were to be paid by the portion of the testator's property which he did not include in the will.''

In light of the nature of these two cases and the trial judge's reference to them, we conclude that the proration of expenses of administration was raised at the hearing on the final account. Where this occurs and no request is made that the exception be reduced to writing, that requirement of section 927, Probate Code, is waived. In *Estate of Marre,* 127 Cal. 128, 132 [59 P. 385], the appellate court presumed that the requirement that objections to an account be in writing had been waived by the administrator where ''. . . oral objections were made in his presence and in the presence of the court, and [he] at no time objected. . . .'' In *Estate of Johnston,* 188 Cal. 336 [206 P. 628], it was considered the lack of verification of written exceptions to an account had been waived by failure to make any objection thereto.

Moreover, in one sense, we are dealing with the *duty* of the probate judge to see to it that the provisions of a statute which have given direct preference to a certain class of legatees when it comes to allocating expenses of administration are carried out. We feel that an oversight as to a duty of this nature should be correctable originally on appeal. A number of decisions support this viewpoint, and the cases cited by respondents do not make it untenable.

In the early case of *In re Sanderson,* 74 Cal. 199 [15 P. 753], objections were filed to an account indicating that it did not reveal that a promissory note listed as ''uncollected'' was not uncollected through no fault of the administrator. At the hearing, the objectors wanted to show that the administrator was negligent in not making the collection. The administrator contended on appeal that the objectors did not have the right to do this because they had not filed specific objections. The

decree of distribution. He contended on appeal that all of the expenses of administration should have been paid from what should have been the residuary estate. The appellate court agreed, pointing out that property bequeathed to a residuary legatee must be resorted to for payment of expenses of administration prior to any resort being made to property specifically devised or bequeathed.

[8]In *Estate of Traver* the testator had devised only one-half of his estate and had made no provision for payment of expenses of administration. It was held on appeal that they had to be borne wholly by the undevised portion of the estate.

appellate court stated that it was "the *duty* of the court of its own motion carefully to scrutinize" the account (italics added; p. 206); that "[t]he court is bound to protect the estate, and, as far as may be, the rights of all concerned" (p. 208); that "in the absence of exceptions, the court . . . *should* inquire into any matter which may seem to the court objectionable, and pass judgment thereon; . . ." (p. 208); that "it is the *duty* of the court carefully to scrutinize the account, and to reject all claims of the executor illegal in themselves or unjust in fact." (Italics added; p. 210.)

In *Estate of Hubbell,* 216 Cal. 574 [15 P.2d 503], the question involved whether interest should be paid on a legacy. It was not clear from the averments of the petition for distribution that interest on the legacy was to be denied, and such a claim had not been made in the court below. By reason of this circumstance, the appellate court ruled that the point was timely presented on appeal. In addition, however, the court said this (p. 578) : "It was the *duty* of the probate court to *distribute the estate among the persons entitled and in the proportions due them under* the will and *the law,* and to order the payment of interest to the appellants on their legacies." (Italics added.) (See also *Estate of Marre, supra,* 127 Cal. 128, 132; *Estate of Franklin,* 133 Cal. 584, 587 [65 P. 1081]; *Estate of Willey,* 140 Cal. 238, 243 [73 P. 998]; *Estate of Hite,* 155 Cal. 448, 453 [101 P. 448]; *Estate of Barreiro,* 125 Cal.App. 752, 773-774 [14 P.2d 786].)

In *Estate of More,* 121 Cal. 635 [54 P. 148], (cited by respondents), where written exceptions had been filed, the court, by way of dictum, stated at page 639 : "But, whether exceptions are filed or not, the court *should* carefully examine every account presented for settlement and be satisfied that it is in every respect practically correct before entering an order settling it." (Italics added.)

In *Estate of Kirkpatrick,* 109 Cal.App.2d 709, 713 [241 P.2d 555], (cited by respondents), the court stated : "If there were further objections to the final account, it was incumbent upon appellant specifically to allege them. Failure to do so operates as a waiver of any opposition thereto." What the "further objections" might have been that were referred to is not made clear, and they must have been in the miscellaneous general category.

In *Estate of McKenzie,* 199 Cal.App.2d 393 [18 Cal.Rptr. 680], (cited by respondents), the appellate court, in reviewing an order approving an executor's account, held that a contention by an objector that the executor should have valued the

estate a year after death had no merit. One reason given was that the objection had not been raised in probate court and appellant was not entitled to raise it at the appellate court level, "as points not raised in the court below will *ordinarily* not be considered on appeal." (Italics added; p. 400.) However, in the same case, in considering appellant's contention that each executor should have been charged with interest on certain legacies, the appellate court determined that one legacy was specific (not pecuniary) and so noninterest bearing, saying (p. 399) : "While the point [meaning the specific nature of the legacy] was not raised before the probate court, the point is properly before this court."

Thus, we feel that it is proper to take cognizance of this point on appeal and to ascertain if statutory strictures require adjustment of the account in this respect as to Patricia.

■ There are no findings of fact in our case, in the order, or otherwise. However, no objection was made by respondents, and the trial judge's thinking is revealed in his memorandum decision which we use in interpreting the order. Under the circumstances, it is presumed that the trial judge found as true, by direct or inferred deduction, any factual element in the evidence supportive of his order. Significant to the issues on appeal are the following factual matters in that category.

Decedent made out his will when he was 66 years old. It was holographic. A true reproduction is as follows:[9] [See p. 776.]

Decedent died the next year. He had had a career as an engineer and inventor. He and his wife had been divorced in 1931. She had moved to Minnesota, taking the two young children of the marriage, Patricia and Joan, with her. Due to the wife's persistent feelings of animosity toward decedent, there had been little contact between him and his daughters. However, Patricia had visited decedent twice when she was older (in 1947 and 1961) and there had been considerable communication between them, including exchanges of gifts. Although Joan never saw decedent personally between 1931 and his death, she had spoken to him on the telephone on several occasions, exchanged some letters and received a few gifts from him.

---

[9] We feel that it facilitates understanding the resolution of the issues in this case to reproduce the will in its holographic form. In *Estate of Barnhart, supra* (footnote 3), 226 Cal.App.2d 289, the will is reproduced in printing at pages 292 and 293.

All other devisees and legatees of the will were nonrelatives. Decedent had known Oscar Watson since 1923. They had been longtime friends and business acquaintances. William Harris, Jr., was a neighbor boy of whom decedent had become quite fond. Imogene Warner had known decedent since 1939 and had had almost continuous contact with him up to his death. The Cummings family had known decedent since 1943, had lived with him at his residence for a considerable period of time, had otherwise visited and corresponded with him, and had received gifts from him. There had been a

14.

I, George Edward Bambart, being of sound mind + I believe body, with to make provision for the disposition of my property, if for any reason God should wish to call me.

1. One payment of $1,000.00 as final settlement. The property at 2228 New York Dr., & 407 & 411 Waldo Ave., Pasadena, to be deeded to Patricia Chalgien all books, tools, & machinery, to have and to hold intact, during her life time then turn it over to the State of California as a museum at 2228 New York Dr., plus 100 shares McCord —

2. Jean Dangria — 100 shares McCord.

3. Imogene Warner 100 shares U.S. Steel,

4. Jeanne - Ed - Robert Wren - all the lots or in L.A. County, which I now own, plus 100 shares of McCord.

5. Bill Harris Jr. 1000 g. van Worth —

6. Lot 4 T #330 to Oscar Watson, he to act as trustee for my estate,

7. All residue from any Robert Wren, 10% to Mr. Oscar Watson & the Balance equally divided by vote those the full - Angeles. Say so. George Edward Bambart

FLIGHT PATH CONTROL CO. 2230, 1250

warm relationship between them. Glenn Ogg was a longtime friend of decedent.

In a prior appellate decision made by another division following a probate court hearing to determine interests in the estate (*Estate of Barnhart, supra,* 226 Cal.App.2d 289, hereinafter *Barnhart* I) it was ruled that decedent had devised full fee interests in the New York Drive and Waldo Avenue properties to Patricia and had made unconditional bequests of the books, tools and machinery and McCord stock to her and that there was only a precatory request for her to turn over the real property and books, tools and machinery to the State of California on her death. That decision also held that the decedent had bequeathed his cause of action against the United States in equal shares to all the beneficiaries of his estate (10) other than the state; and that decedent was intestate as to any residuary estate.

The New York Drive property was the residence of decedent. At the time decedent wrote his will, it had an encumbrance against it (which the parties stipulated secured a personal obligation of decedent) of about $1,400. The Waldo Avenue property was improved with an apartment house. At the time decedent wrote his will, it had an encumbrance against it (which the parties also stipulated secured a personal obligation of decedent) of about $21,600. It was sold during administration of the estate. The encumbrance was assumed by the buyer. The *net* proceeds were credited to Patricia in the final account. The amounts of these encumbrances were substantially the same when decedent died. At the time he made his will, decedent was aware of the approximate values of the various items of real and personal property which he owned, except the lawsuit against the United States, and he was cognizant of the encumbrances against the New York Drive and Waldo Avenue properties he was devising to Patricia and the approximate amount thereof.

Decedent willed all of his property except some securities and miscellaneous items of small value, and he acquired very little additional estate which became part of the intestate residuum. It was clear to decedent at the time he made his will that all, or substantially all, of the residuum of his estate would be used up in paying expenses of last illness and burial, ordinary debts, estate taxes, and expenses of administration.

We first take up the more significant question on the appeal, whether the two parcels of real property devised to

Patricia should be exonerated from decedent's indebtedness which they secured; that is, whether Patricia is entitled to their distribution free of the encumbrances. If Patricia is so entitled, it would mean that the executor will have to secure the necessary funds from the other devises and legacies (including those to Patricia other than the two parcels of real property), since all of the residuary estate has been exhausted in partially paying the federal estate tax and the costs of administration.

Patricia contends that the will should be construed to require such exoneration and that the devises and legacies made to other beneficiaries (not including her sister) are proper sources of assets with which to accomplish such exoneration because they were general (rather than specific) in nature and thus eligible for exoneration purposes under section 736 of the Probate Code, and because the decedent's obligations secured by the parcels willed to her were personal. The respondents argue that there should be no exoneration because there was an intent of the decedent that there should be none, or, if this were not found to be so, because there are no assets in the estate with which exoneration could be accomplished since the other devises and bequests are specific and ineligible for such use under section 736 of the Probate Code.[10]

The first question to be answered therefore is whether there was an actual intent of decedent not to have exoneration. Such an actual intent governs. (*Estate of Porter,* 138 Cal. 618, 621 [72 P. 173].) ▮ Whether an actual intent of a testator existed as to some point is to be discerned from the terms of the will in light of extrinsic evidence of surrounding circumstances. (*Estate of Axelrod,* 23 Cal.2d 761, 766 [147 P.2d 1]; *Estate of Wilson,* 184 Cal. 63, 66-67 [193 P. 581];

[10]Section 736, Probate Code, provides as follows: "When a testator devises land subject to a mortgage, deed of trust or other lien, other property *specifically* devised or bequeathed shall not be sold for the purpose of exonerating the encumbered property unless a contrary intention [that is, an intention that other property specifically willed nonetheless shall be sold to exonerate the encumbered property being devised] can be gathered from the terms of the will, read in the light of the circumstancs surrounding its execution. A mere direction that all the testator's debts be paid is not sufficient evidence of such contrary intention." (Italics added.)

The trial judge seemed to believe that section 750 of the Probate Code was involved in the problem of deciding the testamentary intent as to exoneration. However, its province is to set out a priority of access to sources for payment where it is already determined that some debt (such as an obligation from which a devise which has been exonerated) must be paid off.

*Estate of Thompson,* 50 Cal.2d 613, 617 [328 P.2d 1] ; *Estate of Barnhart, supra,* 226 Cal.App.2d 289, 297-298.)

If such an actual intent is found, there is no need to be concerned with the provisions of section 736 of the Probate Code and subsidiary arguments of the parties concerning the nature of the other devises and bequests, since the code section is applicable only in the circumstances where there is to be exoneration.

On the basis of factors discussed hereafter, we find that the deceased did have an intent that the encumbered properties devised to Patricia should not be exonerated. Consequently we do not apply the code section and therefore do not have to analyze the will and surrounding circumstances with respect to the other possible actual intent which would be significant if we were applying section 736, Probate Code.

In connection with the matter of *actual* intent, an extremely important factor is the circumstance that the will under consideration was construed in *Barnhart I* in connection with the proceeding to determine interests in the estate. Chiefly involved in that appeal was a determination of the nature of the testamentary disposition to Patricia and the nature of the testamentary disposition of the decedent's interest in a patent lawsuit against the United States. To the extent of those determinations that decision is the law of the case. Furthermore, we feel that we should be guided by an indication of the testator's intent, present in that decision, which applies to the present exoneration issue. First of all, we conclude that the *Barnhart I* opinion has provided indications supportive of finding an intent of the decedent that there should not be exoneration. Moreover, we feel that this conclusion is supported by certain other factors not dealt with in *Barnhart I.*

In holding that paragraph One of the will made an unlimited devise of the New York Drive property, the Waldo Avenue property, the books, tools and machinery and the 100 shares of stock in McCord to Patricia, the court in *Barnhart I* did not have to specifically concern itself with the question of whether encumbrances against the parcels of real property should be exonerated. However, it did pose certain questions about the issue which we will examine later. We first consider the following language appearing at pages 299 and 300 of the *Barnhart I* opinion.

"The evidence shows that the testator was particularly fond of his daughter Patricia. . . .

"It seems unlikely that this testator, so demonstrably concerned for his child's welfare, would intend to leave her *a heavily mortgaged life estate* in these properties. . . .

"A construction applied to this first section of the will requiring Patricia to assume payment of any part of the outstanding trust deed indebtedness against the properties devised would be inconsistent with the obligation normally borne by life tenants who usually are required to pay only the interest on secured debts. [Citations.]" (Italics added.) Thus, the *Barnhart I* court, in reaching its decision that there was *not* an intention of the testator to give a life estate to Patricia with the remainder to go to the State of California, but rather an intention to devise to her a full fee ownership without limitation but with a precatory recommendation that upon her death she turn it over to the state, *adopted as a premise the proposition that Patricia would be paying off the encumbrances.* Clearly this premise was reached by an implied holding that the wording of the will (read in the light of the surrounding circumstances known to the court through the extrinsic evidence received) established that the testator expected Patricia would receive the parcels from his estate subject to the encumbrances and thereafter would be subject to the burden of paying them off; in other words, for all practical purposes, the court in *Barnhart I* found an intent that there should be no exoneration. The determination in *Barnhart I* that Patricia was devised a fee and not a life estate in the two parcels has built into it the proposition that she takes them encumbered, because the strong inference is that, had the *Barnhart I* court concluded that the intent of the testator, actual or imposed by statute, was that the devises should be exonerated from the encumbrances and taken by Patricia free and clear, it would have construed the disputed language of the will as giving to Patricia a life estate only. No doubt the *Barnhart I* court was motivated in this respect (although it did not express its motivation in words) by the second factor which we feel demonstrates that the decedent had the intent that there should be no exoneration.

The testator was aware that the parcels he was devising to Patricia were encumbered in a combined amount which was substantial. The testator is to be deemed to have acted with the belief that all legacies will be satisfied (absent an expression in the will to the contrary, and there is none in this

will). (*Estate of Buck*, 32 Cal.2d 372, 377 [196 P.2d 769].)
Nonetheless, the decedent made practically all of his property
the subject of legacies, including his interest in the law suit
against the United States (which he might have felt would
ultimately produce more funds than it did). The trial judge
felt that decedent knew that there was a paucity of assets to
become the residuum of his estate and that it would have to be
used for estate taxes and costs of administration; that it must
have been obvious to him that, were he to provide for exonera-
tion as to the two parcels he was devising to Patricia, in order
to get the funds to pay off the encumbrances, heavy inroads
would have had to have been made into the other devises and
bequests, including those to his daughter Joan and to Patricia
herself, thus defeating these legacies to a very considerable
degree. The very act of making the various devises and
bequests in his will (including provision for specific numbers
of shares of stock to various beneficiaries) indicates that the
testator was thinking about the value of his various property
interests and had in mind the encumbrance and what effect
exoneration would have on the legacies for which he was
making provision. Thus, as among the three alternatives,
intent not to have exoneration, no intent at all, and intent to
have exoneration, the first is the most reasonable.

Patricia argues that the preliminary phrase in paragraph
One of the will reading, ''One payment of $1000.00 from
Patricia Chalgren as final settlement,'' creates ''an equitable
charge of $1,000.00 on said properties devised to Appellant''
and ''clearly evidenced testator's intention to exonerate the
encumbrances on said properties''; that '' [t]he most reasona-
ble . . . interpretation of said phrase is that the testator
intended the debts secured by encumbrances on the real
properties devised to Appellant to be paid by his estate, except
to the extent of $1,000.00 which Appellant was to pay as final
settlement.''

The court in *Barnhart I* posed various queries about the
preliminary phrase and then indirectly answered them in a
manner adverse to Patricia's contentions.

''By using the words, 'One payment of $1,000.00 from
Patricia Chalgren as final settlement,' did the testator intend
that Patricia should pay $1,000 as a condition precedent to
receiving the devise of the two properties, or as a condition
subsequent attached to her devised estate therein? Did the
testator mean that Patricia was to pay only $1,000 of any
outstanding indebtedness for which these properties were

security and that the balance, if any, was to be paid by his executor, so that Patricia would receive an unencumbered title?'' (Pp. 298-299.) The queries were not immediately answered, but later in the opinion the court said, ''It seems unlikely that this testator . . . would intend to leave . . . [Patricia] a heavily mortgaged life estate . . . requiring . . . [her] to pay $1,000 for the privilege of receiving such an inheritance.'' (P. 299.)

Also, bearing in mind the sense of the *Barnhart I* opinion, we feel that some effect should be given to the strictures of section 104, Probate Code, which reads in part: ''A clear and distinct devise . . . can not be affected . . . by any other words not equally clear and distinct, . . .''

The court in *Barnhart I* has held that the testamentary phrase in paragraph One of the will reading, ''The property [the two parcels of real property and the equipment] to be deeded to Patricia. . . .'' is clear and distinct. (P. 298.) It obviously felt that the preceding clause about $1,000 as a final settlement was not, considering the various questions posed about it. Also, in this connection, it can be considered that the preliminary phrase is set apart grammatically from the devising clause under the sentence structure employed by the testator. The comma after the first phrase and the word ''plus'' after the devising phrase form the sentence into three independent phrases. Thus, there is no grammatical basis for connecting the so-called $1,000 settlement with the two parcels so as to support the reasoning that the settlement related to obligations against the properties. Under these views the unclear preceding phrase should not be allowed to effect the absolute and unlimited aspect of the devising phrase by making the $1,000 a charge against the property devised by it. If it is not to be considered a charge against such property (which we here hold), then there is no basis for reasoning that because it was the only charge mentioned there were to be no other charges or encumbrances to which the parcels should be subject when they were distributed to Patricia.

However, the preliminary clause, bearing in mind the interlineation, does not need to be labeled unclear and left out of consideration because it is apparently not attachable to the devising clause by way of creating a charge against the properties. It is clear that decedent, with Patricia in mind, first wrote, ''one Payment of $100000 as final settlement'' immediately before his mention of the New York Drive property. He later interlineated the words, ''from Patricia

Chalgren'' after the figure $1,000. It is entirely reasonable to construe these circumstances as showing that decedent first thought of bequeathing Patricia a thousand dollars so that she could pay off the New York Drive property, this being close to the amount owed then (and turning out to be very close to the sum due against it when it was distributed early pursuant to agreement) ; that he then changed his mind and decided that it would be better if Patricia paid it off and so wrote in the modifying wording. Of course this is compatible with a testamentary state of mind that the devise of the Waldo Avenue property was being made subject to its encumbrance and with decedent not having in mind that it was to be paid off for Patricia by his executor.

Consequently we hold that that part of the account showing the principal and interest items as charges against the interests distributable to Patricia is correct and was properly settled by the probate judge.

 With respect to the allocation of the $35,012.44 of costs of administration not defrayed from the limited amount of the residuary estate, we note that the executor spread them pro rata among the proposed distributees based on the ratio of the value each distributive share had to the total value of properties to be distributed. Patricia's percentage was 46.7 percent, making her share of the costs of administration not paid from the residuum $16,350.81. However, section 752, Probate Code, cited by Patricia, provides :

''Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and legacies . . . to kindred shall abate only after abatement of legacies to persons not related to the testator.''

In *Estate of Buck,* 32 Cal.2d 372, 376-377 [196 P.2d 769], the Supreme Court said, in construing section 752, Probate Code : ''It is clear that . . . kindred are given priority over strangers for the protection of legacies whenever there is a deficiency of assets, whether to pay debts or to satisfy legacies, unless a different intention is expressed in the will.

''. . . . . . . . . . . .

''. . . In order to defeat the preference . . . it must affirmatively and unequivocally appear that such was the testator's intent.'' Some abatement of legacies must take place in the estate in order that the expenses of administration can be paid. Nothing in the will or the surrounding circumstances in this case discloses affirmatively and unequivocally that the testator intended that his kindred (the

two daughters) should not have the preference referred to. In this respect the situation is different from the matter of exoneration. There are no similar indications of an intent or any directive features in the prior appellate opinion.

We hold, however, that this rule of priority should not apply to the allocation of the federal estate tax. That should be allocated in accordance with sections 970, 971 and 976, Probate Code.[11] We feel that their directions override those of section 752, particularly since the tax involved is related to the decedent's privilege of willing the property. Only the unpaid costs of administration should be paid from nonkindred legacies.

The enactment of the federal estate tax proration law (sections 970 *et seq.*, Prob. Code) placed the tax in a different category than an ordinary expense of administration. See *Estate of McAuliffe,* 132 Cal.App.2d 476, 481 [282 P.2d 541], where the court said, "[*A*]*bsent an applicable proration statute* . . . the 'federal estate tax . . . is in the nature of an expense of administration, . . .' [citing *Estate of Bauer,* 59 Cal.App.2d 152, 160 [138 P.2d 717]]." (Italics added.) See also *Security First Nat. Bank* v. *Wellslager,* 88 Cal.App.2d 210, 214 [198 P.2d 700], where the court said that the effect of the law "is to place the burden of the tax upon the beneficiaries whose gifts cause the liability for it to be incurred, . . ." (See also *Estate of Wakefield,* 258 Cal.App.2d 274, 279-280 [65 Cal.Rptr. 664]; *Estate of Setrakian,* 169 Cal.App.2d 795, 801 [338 P.2d 247]; *Estate of Buckhantz,* 120 Cal.App.2d 92, 99 [260 P.2d 794].)

Thus we feel that the account was not correct in charging Patricia with 46.7 percent of true costs of administration. What this item amounts to should be allocated among and charged to the nonrelative distributees (not in any part

[11]Section 970: "Whenever it appears upon any accounting . . . that an executor . . . [etc.] has paid an estate tax . . . under . . . any Federal estate tax law . . . with respect to any property required to be included in the gross estate of a decedent . . . , the amount of the tax so paid, except in a case where a testator otherwise directs in his will . . . , shall be equitably prorated among the persons interested in the estate to whom such property is . . . transferred . . . ."

Section 971: "The proration shall be made by the court . . . in the proportion, as near as may be, that the value of the property . . . of each such person bears to the total value of the property . . . received by all such persons interested in the estate."

Section 976: "The probate court . . . shall make a decree . . . directing the executor . . . [etc.] to charge the prorated amounts against the persons against whom the tax has been prorated insofar as he is in possession of property . . . of such persons against whom the charge may be made . . . ."

to Joan Pengra because she has a similarly favored position). ■ Moreover, in that part of the account the allocation of the federal estate tax should be separated from the costs of administration. Its allocation should be spread pro rata among all the prospective distributees in accordance with sections 970 and 971, Probate Code.

■ Patricia appears to urge that a similar type charge against the portion of the estate proposed to be distributed to her sister, Joan (3.45 percent of the excess of said administrative expenses amounting to $1,207.93) should be considered by this court and found to be erroneous. Joan (who was represented by the same attorneys as Patricia) has not appealed. It is not permissible for Patricia, in her own appeal, to raise the matter on behalf of her sister, Joan. (*Estate of Babb, supra,* 200 Cal. 252; *Estate of Vizelich,* 123 Cal.App. 651 [11 P.2d 870].) It is not within our power to make a direction to the trial judge, when the account is again before him, to make any revision in it with respect to Joan so as to carry out what had been his duty to her, as well as to Patricia, to afford her the benefits of section 752, Probate Code.

The order settling the account is affirmed insofar as it approves charges against the interest of Patricia equivalent to principal and interest paid against the encumbrances; but it is reversed insofar as it includes charges against the interest of Patricia amounting to 46.7 percent of true costs of administration (not including her proper share of federal estate taxes). The case is remanded with directions to the probate court to revise its order for settling the final account in a manner consistent with this opinion.

Appellant shall bear her own costs. Respondents shall bear their own costs.

Kaus, P. J., and Aiso, J., concurred.