[Civ. No. 31576.   Second Dist., Div. Three.   Jan. 25, 1968.]

Estate of MARVIN M. WAKEFIELD, Deceased. RAY-MOND D. WAKEFIELD, Individually and as Co-executor, etc., Petitioner and Appellant, v. DIANA C. WAKEFIELD et al., Objectors and Respondents.

S. R. Zimmerman for Petitioner and Appellant.

George H. Allen for Objectors and Respondents.

COBEY, J.—These are three appeals from a decree in an heirship proceeding prorating the federal estate tax in accordance with the statutory plan found in the Probate Code, sections 970-977. As to subject matter, these appeals lie. (Prob. Code, § 1240.)

This litigation is primarily a controversy between the widow of the testator, Diana C. Wakefield, and his two adult children by an earlier marriage, Raymond D. Wakefield and Marvin M. Wakefield, Jr.

Respondents, the widow and the trustee of the testamentary marital deduction t·ust for her benefit, have moved to dismiss these appeals. At oral argument counsel for appellants conceded that the appeal of Marvin should be dismissed because Marvin failed to file a notice of appeal as required by rule 1(a) of the California Rules of Court. The other two appeals are by Raymond, in his representative capacity as coexecutor of the will and in his individual capacity as beneficiary under the will.

Respondents' challenge to Raymond's appeal in his individual capacity is purely technical. Raymond filed two

notices of appeal. He filed the second one in his representative capacity alone. His reason for filing the second one was that he had misaddressed the first notice of appeal to this court.[1] But this mistake does not affect the adequacy of his first notice of appeal. (3 Witkin, Cal. Procedure (1954) Appeal § 115, p. 2289.)[2] The second notice of appeal therefore will be disregarded by us as unnecessary and superfluous.

On the other hand, respondents' challenge to Raymond's appeal in his representative capacity appears to us to be meritorious. Respondents contend as to this appeal that Raymond, in this capacity, has no appealable interest since he is not personally aggrieved by the decree below.

We agree. As was stated in *Estate of Kessler,* 32 Cal.2d 367, a case not involving heirship proceedings, at p. 369 [196 P.2d 559] : ''It is generally recognized that executors and administrators acting in their representative capacities are indifferent persons as between the real parties in interest and consequently cannot litigate the conflicting claims of heirs or legatees at the expense of the estate. [Citations.] Thus, an executor or administrator is not an 'aggrieved' party entitled to appeal from a decree of distribution determining the share of each of the various claimants in the estate of a decedent. [Citations.] After the decree the administration has served its purpose, and the claims of the creditors have been protected. The beneficiaries must then protect their own rights, and it is not the duty of the executor or administrator to litigate the claims of one against another.''

Similar language is found in *Estate of Ferrall,* 33 Cal.2d 202, at p. 204 [200 P.2d 1, 6 A.L.R.2d 142]. ''[T]rustees acting in their representative capacities cannot by an appeal litigate the conflicting claims of beneficiaries. This rule has generally been limited, however, to prohibiting appeals by a trustee from orders merely determining which beneficiaries are entitled to share in a particular fund. [Citations.] Since a trustee must deal impartially with beneficiaries (see Scott on Trusts § 183), he should not be allowed to participate in the adjudication of their individual claims. Under such circumstances the trustee is therefore to be regarded as a mere

---

[1]Prior to 1967 Probate Code, section 1240 specified that appeals be taken to the ''Supreme Court.''

[2]The triviality of respondents' claim is further shown by the fact that since September 1, 1967, a notice of appeal need not specify the court to which the appeal is taken and a notice stating that the appeal is to the Supreme Court will nevertheless be deemed to be a notice of appeal to this court. (See rule 1(a), Cal. Rules of Court.)

stakeholder with no duties to perform other than to pay out funds to the various claimants as ordered by the proper court, and the beneficiaries must then protect their own rights.''

It is true that the language quoted from both of these cases is dictum and that both were decided before the 1953 amendment to Probate Code, section 1080, (Stats. 1953, ch. 349, § 1, p. 1621) permitting an executor to initiate heirship proceedings. But we do not believe that these two circumstances, alone or together, destroy the soundness of the application of the principle enunciated in these two cases to the factual situation found in this case. In attacking the decree below, Raymond is clearly acting in his own individual interest as an adversely affected beneficiary of the will. He is not acting in the interest of the estate since, as will be pointed out later, the position he asserts would result in an increase in the federal estate tax payable, prior to proration, by the estate. Moreover, the opposing individual interests of the various beneficiaries are all represented in the one remaining appeal, that of Raymond individually.

Accordingly, respondents' motion to dismiss Raymond's appeal in his representative capacity and Marvin's appeal will be granted but respondents' motion to dismiss Raymond's appeal in his individual capacity will be denied.

The fundamental question presented by the one remaining appeal, that of Raymond individually, is whether the widow, Diana, and the trustee of the testamentary marital deduction trust for her benefit should share ratably in the burden of the federal estate tax notwithstanding the fact that neither contributed to such burden. Under the aforementioned statutory plan of proration they would not share at all since, in making such a proration, allowance must be made for, among other things, any deduction allowed by the federal estate tax law for the purpose of arriving at the value of the net taxable estate. (Prob. Code, § 972.) One such deduction is the marital deduction, and in this case, if allowed in full, such deduction renders all the property received by Diana under the will, either outright or in the aforementioned trust, totally exempt from the tax. However, this statutory plan of proration does not apply ''where a testator otherwise directs in his will.'' (Prob. Code, § 970.)

Paragraph Seventeenth of the will involved reads in relevant part as follows: ''I desire to have the Federal Estate Tax and the California Inheritance Tax in connection with

the probating of my estate paid by the devisees and legatees named herein, in proportion to their interest [*sic*] in my estate, including the trust [*sic*] herein established.''[3]

The question at issue thus becomes: Properly construed, does Paragraph Seventeenth direct a proration of the federal estate tax among the beneficiaries of the will different from the statutory plan? Appellant claims it does in that it directs that the burden of this tax shall be spread among the beneficiaries of the will in the proportions that their respective shares of the property received by them under the will bear to all of the property so distributed.[4] In support of this interpretation appellant argues that the testator's basic testamentary plan was to divide his assets specifically among specific beneficiaries, and to revise this division with considerable frequency, and that it follows from such a testamentary plan that the testator likewise intended to spread the burden of the federal estate tax among his beneficiaries in exact proportion to their respective shares of his total estate.[5]

Respondents contend that the correct interpretation of Paragraph Seventeenth is otherwise. More specifically they argue that the words ''my estate'' in this paragraph do not refer to the testator's probate estate, his total estate, or his gross

[3]At oral argument it was conceded that the order fixing the inheritance tax in this estate entered and filed on July 2, 1965, which allocated the burden of that tax among the beneficiaries of the estate other than the widow Diana, is not being challenged on this appeal.

There were two trusts established in the will and, notwithstanding appellant's argument to the contrary, the use of the singular form of the word ''trust'' appears to have been inadvertent in view of the fact that the next to the last prior will of this testator used the plural form of this word to cover both the testamentary trusts created by the will.

[4]Appellant has not been entirely consistent in his interpretation of this paragraph. In both of his briefs he has claimed, without expressly saying it, that proration should be based upon the probate estate. However, in his petition as coexecutor, initiating these heirship proceedings, he alleged that his position and that of Marvin and Hazel Devaney as beneficiaries under the will was that ''Paragraph SEVENTEENTH compels a pro-ration of federal estate taxes . . . to all the beneficiaries under the Will of the above named decedent on [*sic*] the same ratio that the legacies received by said beneficiaries bear to the total gross estate of the decedent as defined by Probate Code § 977.'' Such proration would be in terms of the gross estate for federal estate tax purposes. (Prob. Code, § 977, subd. (b).) In this case the probate estate and the gross estate are apparently identical.

[5]Appellant also claimed in his closing brief that the interpretation urged by him of Paragraph Seventeenth is supported by the testator's basic intent to give by means of his will to his widow and to the children of his earlier marriage ''specific property of approximately equal value.'' There is no support for this claim in the record before us.

estate taxable under the federal estate tax law, but instead refer only to his net taxable estate under that law. In their view Paragraph Seventeenth is merely an inept and inadequate paraphrase of the state's proration statutes.

In its decree the trial court found in accordance with this contention of respondents. Furthermore it pointed out that on the basis of the evidence taken before it the interpretation urged by appellant would result not merely in shifting the burden of the federal estate tax among the various beneficiaries but also in increasing that tax by about $8,000.[6]

■ The only extrinsic evidence offered below, aside from that just alluded to, with respect to the effects of appellant's interpretation of Paragraph Seventeenth, was the testimony of the attorney who drafted the will in question and four prior wills of the testator, which wills contained similar provisions. His testimony in essence was that he could not recall the substance of any discussions or other communications, written or oral, between himself and the testator with reference to Paragraph Seventeenth or its predecessors. Likewise he could not recall that any of the beneficiaries had ever indicated to him that they had had any discussions or communications with the testator concerning Paragraph Seventeenth. Under these circumstances we are not bound by the interpretation given Paragraph Seventeenth by the trial court and may make our own independent interpretation of its meaning. (*Parsons* v. *Bristol Dev. Co.*, 62 Cal.2d 861, 865-866 [44 Cal. Rptr. 767, 402 P.2d 839].)

■ In so doing, however, we must be mindful of the fact that the previously mentioned proration statutes express a general policy of this state that the burden of the federal estate tax shall be spread among the beneficiaries of a will in accordance with the proportionate contributions of each to that burden, and the further fact that this policy must be

---

[6]The trial court gives us two slightly different figures for this estimated increase. This increase results because the marital deduction is decreased by the amount of the federal estate tax which is allocated to the widow and the trustee of the marital deduction trust. (26 U.S.C. § 2056(b)(4).) Therefore it is not surprising that it was the federal estate tax auditor who initially developed the interpretation of Paragraph Seventeenth which the appellant now urges. Nevertheless it seems clear that under federal law the federal government will in all probability accept as binding upon it whatever interpretation is finally made of Paragraph Seventeenth by the appellate courts of this state. (See *Commissioner of Int. Rev.* v. *Estate of Bosch*, 387 U.S. 456, 462-465 [18 L.Ed.2d 886, 892-894, 87 S.Ct. 1776].)

followed unless "there is a clear and unambiguous direction to the contrary" in the will. (*Estate of Armstrong,* 56 Cal.2d 796, 800, 802 [17 Cal.Rptr. 138, 366 P.2d 490].) Obviously Paragraph Seventeenth, which fails to identify which of the several already mentioned "estates" of the testator is to be used as the base in prorating the death taxes payable by the estate, does not have the clarity of meaning required by this exacting standard. Therefore in this case the proration statutes apply regardless of whether such was the actual intent of the testator in including Paragraph Seventeenth in his will.[7]

Raymond also attacks the proration made below on the basis that it is premature since the federal estate tax payable by this estate has not as yet been finally determined and paid. This position is without merit. The estate has already paid to the federal government a federal estate tax of $63,890.21. The agreed-upon deficiency, aside from the amount of marital deduction, is $4,560.39. The entire residue of the estate has been reduced to cash. The proration included in the decree was only illustrative except to the extent it held respondents and the property passing to them under the will immune from liability for any of the tax. After making its illustrative proration, the trial court stated: "The foregoing are approximations; final apportionment of such tax will be required to be computed on the basis of amount actually distributed at the time of final distribution and after final determination of the federal estate tax."[8]

Finally Raymond complains that the clerk gave, in complying with the statutory notice required, insufficient notice of the true nature of these heirship proceedings. But apparently all of the beneficiaries of the estate received, in addition to this notice, a copy of Raymond's petition. This set forth exactly the relief sought in these proceedings, namely, the proration of the death taxes of the estate among the beneficiaries. In any event, Raymond, as the person initiating these proceedings, could not have been adversely affected by any lack of notice of their true nature and therefore he is in no position to complain of such lack of notice to others. (See *Fisher* v. *Nash Bldg. Co.,* 113 Cal.App.2d 397, 404 [248 P.2d 466], hear. den.)

---

[7] This is in accord with the trial court's position in its decree.

[8] The matter must be handled this way because until final determination is made by the California courts as to whether the marital deduction of Diana shall be reduced by allocating any part of the federal estate tax to her and the trustee of the marital deduction trust, it is impossible to compute finally the federal estate tax.

Accordingly, respondents' motions to dismiss the appeals of Marvin M. Wakefield, Jr., and Raymond D. Wakefield, in his representative capacity only, are granted. Respondents' motion to dismiss the appeal of the said Raymond D. Wakefield in his individual capacity is denied.

The decree is affirmed.

Ford, P. J., and Moss, J., concurred.