[No. F002217. Fifth Dist. Dec. 7, 1983.]

Estate of AELDEAN SILVEIRA, Deceased.
LOIS AVONNE SCHNEIDER, as Co-executrix, etc., et al.,
Petitioners and Respondents, v.
ROMAN CATHOLIC BISHOP OF FRESNO et al.,
Objectors and Appellants.

**COUNSEL**

John G. O'Rourke, Andrews, Andrews, Thaxter & Jones and Franklin P. Jones for Objectors and Appellants.

Griswold, Bissig, LaSalle, Cobb & Dowd and Steven W. Cobb for Petitioners and Respondents.

**OPINION**

**FRANSON, Acting P. J.—**

### THE CASE

We are required to interpret decedent's will to determine: (1) whether appellants, three charitable organizations, should be required to pay a portion of death and inheritance taxes when the gifts to these organizations did not contribute to the taxable estate and (2) whether appellants should be required to pay a portion of administrative costs when the residue described in the will is sufficient to cover these costs. We answer both of these questions in the affirmative and affirm the judgment.

Decedent, a widow, died testate on April 29, 1982. The inventory and appraisement showed her estate to be worth $3,170,522.32. After deducting the specific devises and bequests in the will, there remained a residue to

pay taxes and expenses of administration of $355,587.39; however, the projected taxes and expenses of administration were in excess of $1.3 million.

The co-executrices of the will filed a petition for instructions regarding proration of taxes and administrative costs, alleging that under the will the death taxes and costs should be prorated among all of the devisees and legatees including appellants. Appellants disagreed, claiming that as charitable devisees under the will they should be exempt from bearing any burden of the taxes and administrative costs.

The probate court rejected appellants' contention and instructed the co-executrices accordingly.

## THE FACTS

In her will, the decedent devised undivided one-third interests in an 80-acre parcel of real property in Kings County to appellants, three Catholic charitable organizations. Decedent named her two stepdaughters, Lois Avonne Schneider and Anne Frances Lewis, respondents herein, as joint executrices.

The critical portion of the decedent's will for purposes of this appeal is paragraph "EIGHTH":

"EIGHTH: It is my will and desire that all of the residue of my estate be used to pay any and all estate, inheritance, succession or other death taxes, duties, charges or assessments imposed upon or in relation to any property by reason of my death, and without proration of any charge therefor against any person who receives such property under the terms of this Will, provided, however, that should the residue of my estate be insufficient to pay the expenses of administration, and any of such taxes, duties, charges, or assessments, then it is my direction that the said charges be prorated *among all of the devisees and legatees* under this Will." (Italics added.)

The probate court declared that it found no ambiguity or uncertainty in paragraph eighth: "It is clear the testator's intent was to pay taxes, duties, charges or assessments out of the residue, and if the residue is insufficient, that the charges be prorated among all the devisees and legatees. The Court believes *all means all* and not some. . . ." (Italics original.) The court found that paragraph eighth directed the co-executrices not to follow the federal estate tax proration provision set forth in Probate Code section 970 et seq., nor the apportionment provisions governing the California inheritance tax set forth in Revenue and Taxation Code sections 14101 and 14121-

14123 nor the directions of Probate Code section 750 et seq. concerning the order of resort to estate assets for payment of debts and costs of administration. Thus, the court said, ". . . [T]he correct interpretation of paragraph EIGHTH of the decedent's Will requires them to charge all federal estate taxes, all California inheritance taxes, and costs of administration of decedent's estate not paid from the residuary of decedent's estate on a pro rata basis by [*sic*] *all* beneficiaries taking under decedent's Will without taking into consideration any exemptions or deductions otherwise allowed to a specific [charitable] beneficiary." (Italics original.)

## DISCUSSION

Probate Code section 970 provides: "Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other fiduciary has paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, *except in a case where a testator otherwise directs in his will,* . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." (Italics added.) ▮ The statute expresses a general state policy that absent the testator's direction to the contrary, the burden of the federal estate taxes shall be borne by each beneficiary to the extent the beneficiary's share of the property has contributed to the tax. (*Estate of Armstrong* (1961) 56 Cal.2d 796, 800 [17 Cal.Rptr. 138, 366 P.2d 490].) Moreover, any ambiguity in the will as to how the taxes are to be apportioned is to be resolved in favor of *equitable* proration under the statute. (*Estate of Hendricks* (1970) 11 Cal.App.3d 204 [89 Cal.Rptr. 748].)

▮ The question is therefore presented: did the testator express an intent in her will contrary to the equitable proration scheme of Probate Code section 970? Giving the will our independent interpretation (*Estate of Carley* (1979) 90 Cal.App.3d 582, 585 [153 Cal.Rptr. 528]), we conclude that she did.

A will is to be construed according to the testator's intention. (Prob. Code, § 101.) Such intent is to be determined from the language of the will itself. (*Estate of Kaseroff* (1977) 19 Cal.3d 272, 275 [137 Cal.Rptr. 644, 562 P.2d 325].) Thus, we are not permitted to speculate as to any undeclared purpose which the testator may have had in mind. (*Estate of Deacon* (1959) 172 Cal.App.2d 319, 323 [342 P.2d 261].) We must give the words used by the testator their ordinary meaning unless it is clear the testator

intended to use the words in a technical or extraordinary sense. (Prob. Code, § 106.) Also, the words are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions ineffective. (Prob. Code, § 102.) Finally, judicial precedent is of little help in construing a will; each case turns on the particular language used by the testator. (*Estate of Newmark* (1977) 67 Cal.App.3d 350, 355 [136 Cal.Rptr. 628].)

The direction that the charges be "prorated among *all* of the devisees and legatees under this will" (italics added) is clear and unambiguous. "All" means all, including the charitable beneficiaries. As devisees under the will, appellants are required to bear a portion of the charges including the death taxes.

Appellants cite *Estate of Neider* (1966) 243 Cal.App.2d 102 [52 Cal.Rptr. 47] to support an ambiguity in paragraph eighth of the will. In *Neider,* the court found it proper to exclude a charitable beneficiary from a share of the death tax burden when the testator's will made several specific devises and bequests and then said, "the remainder after the above is taken from my holdings" shall be distributed in two equal parts, one part to appellant and one part to other beneficiaries. The court said: "Here, there is no language indicating any such intent regarding exact equality of treatment of the residuary beneficiaries. An equal division of assets does not necessarily mean an equal sharing of the tax burden. . . . [I]t cannot be argued here that in directing that the residue be equally divided between the University and the other legatees, the testator intended an equal tax burden . . . [on the theory that] he must be presumed to have known that his gift to the University and other charities would be deducted from the value of his gross estate for estate tax purposes (26 U.S.C.A., § 2055)." (*Id.,* at p. 109.)

"In the absence of any language indicating the testator's intent as to the allocation of the tax burden or a specific direction for exact ultimate equality of treatment among all beneficiaries, we cannot find here the clear, unambiguous direction against the proration the law requires [citation]. A simple direction to an executor or trustee to divide the residue of an estate in stated proportions among taxable and nontaxable transferees is not a sufficient direction against the apportionment of the federal estate tax prescribed by the statute." (*Id.,* at p. 110.) *Neider* is of no help to appellants since in the present case the testator explicitly directed all charges, i.e., taxes, to be prorated among "all" of the beneficiaries which included appellants. Unlike the language in *Neider,* this language constitutes a sufficient direction that the tax burden be shared among all beneficiaries so as to exclude an equitable apportionment of the taxes under Probate Code section 970.

Appellants argue several ambiguities in paragraph eighth. First, they contend that the word "charges" as used in the last clause of paragraph eighth does not include death taxes since charges are mentioned separate from taxes in the other parts of paragraph eighth; hence, the decedent's direction to prorate "said charges" among all of the devisees and legatees does not include the taxes. We reject this contention since pragmatically it would render the word "charges" meaningless. The word is used three times in paragraph eighth, and we must give it a commonsense meaning consistent with the other language of the paragraph. (Prob. Code, §§ 102, 103.) The meaning of the words "said charges" in the last clause is explained by reference to the preceding language "should the residue of my estate be insufficient to pay the expenses of administration, *and* any of such *taxes, duties, charges, or assessments, then it is my direction . . ."* (italics added). We therefore construe the word "charges" as used in the last clause of paragraph eighth to include both taxes and costs of administration.

Appellants next argue that the verb "prorate" as used by the testator in the phrase "be prorated" in the last clause of paragraph eighth is a technical term of art which has a meaning fixed by Probate Code section 970. Appellants assert this interpretation reflects the strong state policy protecting charities from being taxed indirectly on property which they are to receive tax free under the federal estate and California inheritance tax laws. According to appellants, decedent understood appellants' tax exempt status and intended to give the 80 acres to appellants free of any burden of death taxes.

The word "prorate" has a commonly understood meaning: "To divide, assess, or distribute proportionately" (Webster's New World Dict. (2d ed. 1982) p. 1140). It is important to note that Probate Code section 970 does not merely use the word "prorate" but modifies it with the adjective "equitable" so that unless a testator otherwise directs in his will, the federal estate taxes shall be prorated among only those beneficiaries whose property contributed to the tax burden. We find nothing in the language of paragraph eighth to indicate that the testator used the words "be prorated" in a technical or fixed sense as provided in section 970. Nor do we find that the words create an ambiguity as to apportionment of the tax burden so that section 970 comes into play.

Appellants cite *Estate of Wakefield* (1968) 258 Cal.App.2d 274 [65 Cal.Rptr. 664] as a case "closest to Article Eighth of Mrs. Silveira's will" and one which supports a finding of ambiguity in the will. In *Wakefield,* the will provided for specific devises to the decedent's adult children and established a marital deduction trust for decedent's wife. The children contended that the wife's trust should bear a proportionate share of the federal estate taxes and relied on paragraph 17th of the will which provided: " 'I desire

to have the Federal Estate Tax and the California Inheritance Tax in connection with the probating of my estate paid by the devisees and legatees named herein, in proportion to their interest [*sic*] in my estate, *including the trust [sic] herein established.'*" (*Id.*, at pp. 277-278, italics added.) The *Wakefield* court accepted the wife's argument that the word "estate" was ambiguous since it could not be determined if it meant "probate estate," "total estate," "gross estate taxable under the federal estate tax law," or "net taxable estate." (*Id.*, at pp. 278-279.) Since the clause was not a "clear and unambiguous" direction against equitable proration under Probate Code section 970 et seq., the wife's interest was free from the burden of federal estate taxes. The ambiguity in the word "estate" was felt to overcome the testator's explicit direction that the death taxes were to be paid by the devisees and legatees in proportion to their interest in the estate "including the [wife's] trust herein established."

We do not find *Wakefield* persuasive. Citing *Estate of Armstrong, supra,* 56 Cal.2d 796, *Wakefield* found the ambiguity in the meaning of the word "estate" created an uncertainty as to the proportion of the taxes to be paid by the devisees and legatees even though the will provided that the marital trust was to be included in determining the proportion of the taxes to be paid by the devisees and legatees. The court stated: "Obviously Paragraph Seventeenth, which fails to identify which of the several already mentioned 'estates' of the testator is to be used as the base in prorating the death taxes payable by the estate, does not have the clarity of meaning required by this exacting standard [as to payment of taxes]. Therefore . . . the proration statutes apply *regardless of whether such was the actual intent of the testator in including Paragraph Seventeenth in his will.*" (*Estate of Wakefield, supra,* 258 Cal.App.2d at p. 280, italics added.)

With all due respect to the *Wakefield* court, we believe it goes too far in finding an uncertainty in the testator's expressed intent as to how the taxes were to be apportioned. The will expressly provided that the marital trust was to be included in determining the proportion of the death taxes to be paid by the devisees and legatees named in the will. Regardless of any ambiguity in the meaning of the word "estate," it seems apparent that the testator intended the marital deduction trust to bear a portion of the taxes.

*Estate of Armstrong, supra,* 56 Cal.2d 796, does not compel a contrary result. In *Armstrong,* the basic question was whether the probate court had correctly decided that the taxes were to be paid entirely from the probate estate as opposed to the testator's entire taxable estate which included an intervivos trust. All of the property received by the devisees and legatees in *Armstrong* had contributed to the taxes to be paid. Thus, the testator's direction that the executrix pay out of "my estate" all of the debts and death

taxes which may become due "without limitation to property passing under my will" was not a direction that the taxes on the nonprobate estate should be paid out of the probate estate contrary to an equitable allocation under Probate Code section 970. Unlike what appears to be the view of the court in *Estate of Wakefield, supra,* 258 Cal.App.2d 274, we do not read *Estate of Armstrong, supra,* as standing for the proposition that simply because certain words in a will paragraph governing payment of taxes are ambiguous, that all unambiguous directions must be disregarded so that the entire will be interpreted as requiring proration of the tax burden under section 970 if it is clear from all of the language in the will that the testator intended otherwise.

Appellants next argue that paragraph eighth should be construed to require proration under section 970, because the decedent obviously intended to minimize the total tax burden on her estate. Appellants point out that the probate court's order requiring appellants to pay over $89,000 in federal estate taxes will result in an increased total estate tax burden in excess of $54,000 over what it would be if the court had prorated in accordance with section 970. Appellants cite *Estate of Wakefield, supra,* 258 Cal.App.2d at page 279 and *Estate of Neider, supra,* 243 Cal.App.2d at page 110 for the principle that an increase in the tax burden on the estate is a factor favoring equitable proration under section 970. In other words, this is a result which the testator obviously would intend to avoid and it should be considered in interpreting the language of the will. Again, we reject appellants' argument. "While judges may pan the stream for golden nuggets of intent, they are required to stay within the banks of the testator's actual expression." (*Estate of Becker* (1969) 270 Cal.App.2d 31, 34 [75 Cal.Rptr. 359].) Neither can we go beyond the banks of the words "be prorated among all of the devisees and legatees . . ." and speculate as to the testator's state of mind. We are confined by the language used in the will.

Appellants' argument against apportioning a share of the California inheritance taxes to them is essentially the same as their argument against apportionment of the federal estate taxes. Under Revenue and Taxation Code section 14101 et seq., as the sections read at the time of the decedent's death, gifts to charity organizations were exempt from inheritance tax. The cases treat apportionment of inheritance taxes the same as the apportionment of federal estate taxes. (*Estate of Carley, supra,* 90 Cal.App.3d 582; *Estate of Armstrong, supra,* 56 Cal.2d 796; *Estate of Wilson* (1957) 154 Cal.App.2d 24 [315 P.2d 451] and *Estate of Hendricks, supra,* 11 Cal.App.3d 204.) No distinction is made between estate and inheritance taxes in determining whether an ambiguity in the will mandates proration in a certain manner. Thus, the trial court properly apportioned the share of the California inheritance taxes to appellants.

Appellants' final contention is that the testator's will fails to designate the source from which administrative costs are to be paid; hence, the provisions of Probate Code section 750 control, and the residue of the estate becomes liable for such costs. This statute provides: "If the testator makes provision by his will, or designates the estate to be appropriated, for the payment of his debts, the expense of administration, or family allowance, they must be paid according to such provision or out of the estate thus appropriated, so far as the same is sufficient. If insufficient, that portion of the estate not disposed of by the will, if any, must be appropriated for that purpose; and if that is not sufficient, the property given to residuary legatees and devisees, and thereafter all other property devised and bequeathed is liable for the same, in proportion to the value or amount of the several devises and legacies, but specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate." (Prob. Code, § 750.) Appellants argue that since the first clause of paragraph eighth does not mention expenses of administration or explicitly direct the expenses to be paid out of the residue of the testator's estate that such expenses may not be included in the word "charges" to be prorated among all of the devisees and legatees under the will. In other words, appellants argue that the residue of the testator's estate becomes liable for the administrative costs by reason of the provisions of section 750 rather than by reason of the testator's stated intent in her will. Since the residue of the estate totals $355,587 and the projected expenses of administration total only $107,768, the expenses should be paid from the residue without any proration to appellants.

Again, we must look to the language of paragraph eighth. The critical language is "should the residue of my estate be insufficient to pay the expenses of administration, *and* any of such taxes, duties, charges, or assessments, then it is my direction that the said *charges* be prorated among all of the devisees and legatees under this will." (Italics added.) As we have previously explained, the word "charges" reasonably construed includes expenses of administration as well as "taxes, duties, . . . or assessments" mentioned in the first clause of paragraph eighth.

The testator's failure to mention expenses of administration early in the paragraph may simply have been an oversight on the part of her attorney in drafting the will. Alternatively, it may have been the attorney's and presumably the testator's intent to include the costs of administration in the word "charges" as used in the first clause of the paragraph. In either event, construing each part of the paragraph in relation to the other parts in an attempt to find some consistency in the whole paragraph, it is clear that the testator intended that both costs of administration and taxes should be paid from the residue of her estate and if the residue is insufficient to pay all of

these "charges," then the costs and taxes are to be prorated among all devisees and legatees.

*Estate of Cochran* (1973) 30 Cal.App.3d 892 [106 Cal.Rptr. 700] cited by appellants is distinguishable; the problem in that case merely centered around the ambiguous use of the word "residue." The case does not purport to establish a rule for interpreting clauses such as the one in the present case. The testator's intent remains the sole guideline for such interpretation. (Prob. Code, § 101.)

The judgment is affirmed.

Zenovich, J., and Woolpert, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 22, 1984.