ESTATE OF DIONIGI BRUNETTI, DECEASED, BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and S. J. CUTTITTA, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Brunetti v. Commissioner
Docket No. 9398-85
United States Tax Court
T.C. Memo 1988-517; 1988 Tax Ct. Memo LEXIS 544; 56 T.C.M. (CCH) 580; T.C.M. (RIA) 88517; November 7, 1988. Aldo P. Guidotti, for the petitioners. Patricia Ann Golembiewski and Vernon Balmes, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined a deficiency in petitioners' Federal estate tax liability of $ 3,223,785 for 1981. The sole issue remaining for decision is wether, under the California apportionment statute, the amount of the Federal estate tax deduction claimed with respect to a charitable residuary bequest should be reduced to reflect a share of the Federal estate liability. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Decedent died on February 10, 1981. Decedent's original will was executed on March 13, 1970. The will contained seven specific bequests disposing of much of decedent's estate. The residue of decedent's estate was left to a family trust. The 14th paragraph of the will provided that all estate and *546 inheritance taxes were to be paid only out of the residue of the estate and without apportionment. Paragraph 14 reads as follows: Except as otherwise expressly provided herein, I direct that every legacy, bequest, devise and interest given under this will and any codicil to it shall be delivered free from estate and inheritance taxes attributable thereto. Such taxes shall be paid out of the residue of my estate disposed of by this will, as an expense of administration, without apportionment, deduction or reimbursement therefor, and without adjustment among the residuary beneficiaries. Between March 13, 1970, and his death in 1981, decedent executed seven codicils to his will revising substantially the testamentary plan reflected in the 1970 will. Only two of the specific bequests made in the 1970 will survived the various changes made by the codicils. As a result of the codicils, decedent's basic testamentary plan in effect at the time of his death reflected a disposition of only a small part of his estate through specific bequests. The bulk of decedent's testamentary estate (representing assets with a value of approximately $ 7.5 million) was disposed of through two residuary *547 trusts. One residuary trust, into which two-thirds of the residuary estate was to be placed, was established in favor of decedent's testamentary heirs (the "family trust"). The other residuary trust, into which the remaining one-third of the residuary estate was to be placed, was established in favor of qualifying charitable organizations (the "charitable trust"). With regard specifically to the charitable residuary trust, the sixth codicil dated November 22, 1978, provides as follows: Notwithstanding anything contained herein to the contrary, in the event the one-third of my estate set aside and held as a charitable trust for the tax exempt charitable organizations hereinabove set forth, does not qualify as a charitable deduction and exclusion for federal estate tax purposes, in my estate, then in said event the beqeust hereinabove made to said tax exempt charitable organizations shall be revoked and the assets distributed to my trustees to be held and become a part of the Family Trust. The will and codicils do not further define or explain the word "estate" as used by decedent in his will and codicils. In addition, the will and codicils do not provide further explanation *548 of the words "exclusion for federal estate tax purposes" as used by decedent in the above codicil. During the years between execution of the 1970 will and his death in 1981, decedent made substantial inter vivos gifts to charitable organizations. On decedent's Federal estate tax return, a charitable contribution deduction of $ 2,779,390.74 was claimed with respect to the charitable residuary bequest. Upon audit, respondent disallowed $ 869,670 of this deduction. The basis for respondent's adjustment was his determination that the decedent, through the 14th paragraph of his 19970 will, expressly imposed the burden of estate taxes on the entire residuary estate. Respondent therefore reduced the charitable residuary bequest established by the sixth codicil by a share of the estate taxes even though such a reduction of charge to a charitable bequest is contrary to the general scheme of the California apportionment statute. OPINION Section 2055(a)[1] provides generally that the value of all charitable bequests to qualifying organizations is deductible from the gross estate. Section 2055(c) *549 provides that if estate taxes are chargeable to or payable out of charitable bequests, the amount deductible under section 2055(a) is to be reduced by the amount of taxes so chargeable. [2] State law governs the apportionment of estate taxes among properties passing under a will. Riggs v. Del Drago,317 U.S. 95 (1942); Estate of Leach v. Commissioner,82 T.C. 952, 963 (1984), affd. without published opinion 782 F.2d 179 (11th Cir. 1986). *550 Since 1943, California has had an equitable apportionment statute. It reflects the typical rule reflected in most state apportionment statutes to the effect that Federal estate taxes are to be charged to property that generates or creates the tax liability. Property that is excluded from the gross estate or that is deductible from the gross estate in computing the taxable estate under the California statute generally is not charged with any portion of the Federal estate tax liability. Secs. 970 and 972Calif. Prob. Code (West 1981). [3]
*551 California state courts consistently have interpreted this statute as requiring apportionment only to that property which creates the tax. See, e.g., In re Buckhantz' Estate,120 Cal. App. 2d 92, 260 P.2d 794, 798 (1953). Exceptions to that rule are allowed only where the testator's direction in the will to deviate from the general statutory rule is clear and unambiguous. For example, in In re Wakefield's Estate,258 Cal. App. 2d 274, 65 Cal. Rptr. 664, 668 (1968), because of an ambiguity in the will pertaining to the word "estate," apportionment of estate taxes was governed by the general statutory rule, and no portion of the taxes were charged to that part of the estate qualifying for the marital deduction. The court explained -- we must be mindful of the fact that the previously mentioned proration statutes express a general policy of this state that the burden of the federal estate tax accordance with the proportionate contributions of each to that burden, and the further fact that this policy must be followed unless "there is a clear and unambiguous direction to the contrary" in the will. ( Estate of Armstrong,56 Cal. 2d 796, 800, 802, 17 Cal. Rptr. 138, 142, 366 P.2d 490, 494.) *552 Obviously Paragraph Seventeenth, which fails to identify which of the several already mentioned "estates" of the testator is to be used as the base in prorating the death taxes payable by the estate, does not have the clarity of meaning required by this exacting standard. Therefore in this case the proration statutes apply regardless of whether such was the actual intent of the testator in including Paragraph Seventeenth in his will. [Fn. ref. omitted.] A clear and unambiguous statement in a will that the statutory apportionment rule is not to be followed and that, for example, the entire estate tax liability is to be allocated to the residue of the estate will be honored. See In re Cochran's Estate,30 Cal. App. 3d 892 (1973); In re Wilson's Estate,154 Cal. App. 2d 24, 315 P.2d 451 (1957); In re Parker's Estate,98 Cal. App. 2d 393, 220 P.2d 580 (1950). The cases are clear, however, that absent such a clear and unambiguous statement in the will, the California statutory rule apportions taxes only to the property specified in the *553 statute (namely to the property generating the tax liability) and excludes property qualifying for the charitable deduction. See Estate of Carley,90 Cal. App. 3d 582, 153 Cal. Rptr. 528 (1979); In re Hendricks' Estate,11 Cal App. 3d 204, 89 Cal. Rptr. 748 (1970); In re Estate of Armstrong,56 Cal. App. 2d 796, 17 Cal. Rptr. 138, 366 P.2d 490 (1961); see also 70 A.L.R 3d 630, 643 (1976). The apportionment rules and judicial decisions of other states generally are similar to the above California rule. See 71 A.L.R. 3d 247, 353-365 (1976); 68 A.L.R. 3d 714, 794-800 (1976). Also, Federal court decisions interpreting various state apportionment statutes similar to the California statute have followed the California rule. See, e.g., First National Bank of Omaha v. United States,490 F.2d 1054 (8th Cir. 1974) (Nebraska apportionment statute); In re Rennie's Estate,430 F.2d 1388 (10th Cir. 1970) (Wyoming apportionment statute); Estate of Fine v. Commissioner,90 T.C. 1068 (1988) (Virginia apportionment statute); Estate of Phillips v. Commissioner,90 T.C. 797 (1988) *554 (Louisiana apportionment statute); and Estate of McCutchan v. Commissioner,T.C. Memo. 1979-393 (Missouri apportionment statute). In spite of the language of the 14th paragraph of decedent's 1970 will (directing that estate taxes be charged to the residuary estate without apportionment), petitioners argue that decedent's will and testamentary plan as modified by the seven codicils and as in effect on the date of decedent's death in 1981, are unclear as to whether decedent intended to charge a portion of the estate taxes to the charitable residuary estate. Petitioners offered at trial oral testimony from the lawyer who drafted decedent's will and the codicils thereto to the effect that in dramatically changing his testamentary plan decedent did not intend for the charitable residuary estate to bear any burden of the estate taxes. Respondent argues that the 14th paragraph of decedent's will survived the codicil changes, that the language in the 14th paragraph is clear and unambiguous, that it overrides the general rule of the California apportionment statute, and that hearsay evidence should not be allowed to contradict the clear language of the will. As explained *555 below, we agree with petitioners. We do not doubt that decedent's original intent (as reflected in the 14th Paragraph of his 1970 will) was to override the general rule of the California apportionment statute, to exempt the seven specific bequests made in the 1970 will from any charge for estate taxes, and to charge such taxes exclusively to the residuary estate. We must, however, also take into account the language of the codicils. In re Bixby's Estate,55 Cal. 2d 819, 824, 13 Cal. Rptr. 411, 413-414 (1961); Secs. 103 and 616 Calif. Prob. Code (West 1981). In this regard, the sixth codicil of decedent's will is not clear as to decedent's intent. The beginning phrase of the relevant language from the sixth codicil -- "Notwithstanding anything contained herein to the contrary" -- states that the codicil language controls any inconsistent language contained in the 1970 will or in the first through fifth codicils. The sixth codicil then provides that if one-third of "my estate" does not qualify for the charitable deduction, the entire charitable bequest shall be rovoked. In referencing "my estate," it is not clear whether decedent was referring to one-third of *556 his gross residuary estate (before taxes) or to one-third of his net residuary estate (after taxes). If decedent was referring to his gross residuary estate and if the charitable residuary bequest is charged with estate taxes, as respondent contends, less than one-third of decedent's gross residuary estate would qualify for the charitable estate tax deduction and decedent's entire charitable residuary beqeust would be revoked. Certainly, that result was not intended by decedent. Either decedent was referring only to one-third of his net residuary estate in the relevant language of the sixth codicil, or he was referring to one-third of his gross residuary estate and he intended that the newly created charitable residuary bequest would not be charged with estate taxes. Other language in the sixth codicil also is unclear as to its effect on the 14th Paragraph of decedent's 1970 will. The sixth codicil refers to the charitable residuary bequest as giving rise to a "deduction" and an "exclusion" for Federal estate tax purposes. The charitable bequest certainly gives rise to a "deduction" and that word "exclusion," did decedent intend that the charitable residuary bequest was to be *557 "excluded" or "exempt" from being charged with any portion of the estate taxes? The resolution of the above ambiguities in decedent's will and codicils is not important to this case. As explained, the mere presence of these ambiguities in decedent's testamentary documents (where the ambiguities relate to how estate taxes are to be apportioned) triggers the general rule of the California apportionment statute under which a charitable bequest is not to be charged with estate taxes. The ambiguities found in the relevant testamentary documents require us to apply the general rule of the California apportionment statute. We need not consider the hearsay evidence offered by petitioners, and we need not determine its admissibility. For the reasons stated, for Federal estate tax purposes, the charitable deduction claimed by petitioners with respect to decedent's charitable residuary bequest is not to be reduced by any charge or apportionment thereto for estate taxes. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect as of the date of decedent's death. ↩
2. Sec. 2055(c) provides as follows: (c) Death Taxes Payable Out of Bequests. -- If the tax imposed by section 2001↩, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes.
3. Secs. 970 and 972, Calif. Prob. Code (West 1981), provides as follows: § 970. Proration; persons interested in estate; exceptions Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other fiduciary has paid an estate tax to the Federal Government under the provisions of any Federal estate tax law, now existing or hereafter enacted, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except in a case where a testator otherwise directs in his will, and except in a case where by written instrument executed inter vivos direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such inter vivos instrument, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. § 972. Allowances; exemptions and deductions In making a proration allowances shall be made for any deductions allowed by such act for the purpose of arriving at the value of the net estate.↩