Edward McKEON, Trustee of the McKeon Family Trust, Scott McKeon, Trustee of the Marguerite McKeon Trust, Ross McKeon, Trustee of the Marguerite McKeon Trust, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 97–16103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1998.

Decided Aug. 5, 1998.

■

---

Harry J. Kaplan, San Jose, California, for the plaintiffs–appellants.

Robert W. Metzler, United States Department of Justice, Tax Division, Washington, D.C., for the defendant–appellee.

Before: CHOY, PREGERSON, and BOOCHEVER, Circuit Judges.

CHOY, Circuit Judge:

### Introduction

Plaintiffs–Appellants, members of the McKeon Family ("Estate"), appeal in this tax action the grant of summary judgment in favor of Defendant–Appellee United States of America ("Government"). The district court found that the Estate had overstated its marital deduction under I.R.C. § 2056.

We REVERSE.

### Factual and Procedural Background

Marguerite B. McKeon ("decedent") died on April 27, 1994 while a resident of the State of California. She was survived by her husband Edward T. McKeon, Jr. They had two sons, Ross T. McKeon and Scott M. McKeon, both living at the time of the decedent's death.

Prior to her death, the decedent executed two trusts and a will dated February 4, 1992.

### I. The McKeon Trust ("Trust A")

Trust A was funded with the community property of the decedent and her husband, although the trust instrument permitted funding from separate property as well.

Trust A provided that upon the death of the first spouse, the trust was to be divided into 2 parts-a "Survivor's Trust" and "Decedent's Trust."

### A. The Survivor's Trust ("Marital Share")

The Survivor's Trust consisted of the surviving spouse's separate property, the surviving spouse's interest in the community estate, and the marital deduction property.

#### 1. The Marital Deduction Property

The marital deduction property was defined as "the minimum pecuniary amount necessary to entirely eliminate, or to reduce, to the maximum extent possible, any Federal Estate Tax at the Decedent's death, taking into account ... [a]ll deductions taken in determining the estate tax payable by reason of the Decedent's death."

### B. The Decedent's Trust

The Decedent's Trust consisted of the balance of the trust estate.

Pursuant to the terms of Trust A, the property in the Survivor's Trust passed to the surviving husband. Additionally, the surviving husband was entitled to the income from the Decedent's Trust. The remainder interest in the Decedent's Trust belonged to the decedent's two sons.

Trust A authorized payment of death taxes as follows: "Upon the death of either [decedent or her husband], any estate, inheritance, succession or other death taxes ... may be paid from the Trust Estate by the Trustee, in the Trustee's discretion, unless other adequate provision shall have been made therefor."

### II. The Marguerite B. McKeon Trust ("Trust B")

The assets in Trust B were the separate property of the decedent. In addition, the proceeds of an insurance policy purchased by the sons of the decedent on her life were paid into Trust B. The sole beneficiaries of Trust B were the decedent's two sons.

Trust B included a provision authorizing the trustee to pay death taxes as follows: "Upon the death of the [decedent], any estate, inheritance, succession or other death taxes ... may be paid from the Trust Estate by the Trustee, in the Trustee's discretion, unless other adequate provision shall have been made therefor."

### III. The Decedent's Will

In addition to the two trusts, the decedent also executed a "Last Will and Testament." In particular, the will contained the following direction regarding payment of death taxes:

I hereby direct my Executor to pay ... all estate, inheritance, succession, or other death taxes.... Such payments shall be made out of the assets making up the residue of my estate, without proration.... In the event the residuary assets are insufficient to satisfy such obligations, the Executor shall so certify to the then acting Trustee of the said McKEON TRUST, who shall satisfy such obligations from the trust estate.

### IV. The Administrative and Judicial Proceedings

In January 1995, the Estate filed a federal estate tax return reporting a total gross estate of $2,028,972 and a net estate tax of $245,961. The Estate also claimed a marital deduction for bequests to the surviving spouse in the amount of $660,912.

The estate tax was paid on January 25, 1995. The tax was paid by the decedent's two sons out of the proceeds of the life insurance policy. No tax was in fact paid from Trust A.

In July 1995, the Estate filed an administrative claim for refund seeking to recover $163,994 of the estate tax paid. The Estate asserted that it had erroneously included the life insurance proceeds as part of the estate. While the Internal Revenue Service was considering the claim, the Estate filed the instant suit in August 1996. The district court granted summary judgment on this point in favor of the Estate, and this issue is not relevant on appeal.

In January 1997, the I.R.S. assessed a deficiency of $98,282 against the Estate, and the Government filed a counterclaim in the Estate's instant suit. It alleged the Estate had overstated the marital deduction under I.R.C. § 2056.

On May 8, 1997, the district court entered a minute order, granting summary judgment in favor of the Government on the marital deduction issue. This appeal followed.

## Standard of Review

■ We review de novo a grant of summary judgment. *Everson v. United States,* 108 F.3d 234, 236 (9th Cir.1997).

## Analysis

### I. Internal Revenue Code

The Internal Revenue Code imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. *See* I.R.C. § 2001. The taxable estate is determined by deducting various items from the value of the gross estate. Id. at § 2051. A marital deduction is permitted for the "value of any interest in property which passes or has passed from the decedent to his surviving spouse." Id. at § 2056(a). But in determining the deductible value of the property passing, the effect of death taxes on the net value to the surviving spouse's interest must be taken into account. Id. at § 2056(b)(4).

### II. Applicability of California Proration Statute

■ State law governs the effect that death taxes have on the interest passing to the surviving spouse. *Robinson v. United States,* 518 F.2d 1105, 1107 (9th Cir.1975). California has adopted a system under which the estate tax is equitably prorated. *See* Cal. Prob.Code § 20110(a). Generally then, each beneficiary bears a share of the tax in proportion to the interest in the estate received. Id. at § 20111. However, in making this proration, California permits an allowance for federal estate tax deductions. Id. at § 20112(b). Therefore, under California's proration statute, death taxes do not affect the value of the marital deduction property. Indeed, the Government concedes that if California's general proration scheme applies in this case, the property passing to the surviving spouse will not be charged with death taxes.

■ Nonetheless, the Government argues that the decedent opted out of California's proration statute. Under California law, a decedent may avoid the proration system by stating this desire in a written testamentary instrument. *See* Cal. Prob.Code § 20110(b)(1). But the direction to opt out must be "clear and unambiguous." *Estate of Carley v. Hubbard,* 90 Cal.App.3d 582, 153 Cal.Rptr. 528, 531 (1979).

■ We find in this case that the decedent did not opt out of the proration statute in a clear and unambiguous manner. The decedent's will specified that death taxes be paid "out of the assets making up the residue of my estate, without proration." But there were no funds in the residue. In such an event, the will directed that the trustee "shall satisfy such obligations from the trust estate [Trust A]." In the latter direction, there is no mention that payment be made "without proration."

■ Under some circumstances, it might be plausible to imply that the "without proration" provision with regard to the residuary carries over in the event payment from the trust estate were to become necessary. However, such an implication in this case would contradict the decedent's intent. Overall, we are required to construe a will in accordance with the decedent's intentions. *In re Brodersen's Estate,* 102 Cal.App.2d 896, 229 P.2d 38, 45 (1951) (holding paramount that a will be construed according to the intention of the testator).

In this case, it appears that the decedent intended to avoid reducing the marital share by payment of death taxes. This can be inferred from the allocation of marital deduction property to the Survivor's Trust portion of Trust A. The Trust Agreement defines marital deduction property as "the minimum pecuniary amount necessary to entirely eliminate, or to reduce, to the maximum extent possible, any Federal Estate Tax." But if the taxes were paid from Trust A which had no funds other than marital deduction property, the federal estate tax would not be minimized. In order to free the net value of the surviving spouse's interest from death taxes and therefore maximize the marital deduc-

tion, the estate tax would need to be paid from Trust B, the non-marital trust.

The Government asserts that it was not the decedent's intent to burden Trust B with death taxes. But this inference cannot be made, as the Government suggests, solely on the basis that the decedent specified in Trust B that all of her separate property pass to her children, not her husband. That specification addresses only the decedent's choice of beneficiary; it does not necessarily imply any direction against payment of death taxes from Trust B.

On the contrary, the marital deduction provision does indicate that the decedent did not want to burden Trust A with death taxes. Therefore, finding that the will directed payment of death taxes without proration would be inconsistent with the decedent's intent.

█ Even if we were to imply that the decedent opted out of California's proration statute in her will, that direction would be made ambiguous by the marital deduction provision. It is well-settled that any ambiguity must be resolved in favor of proration. *See Estate of Carley,* 153 Cal.Rptr. at 531.

Still, the Government asserts that the marital deduction provision does not conflict with the will. It argues that the marital deduction provision is a definitional formula to be considered only in the context of distributing assets within Trust A. The Government concludes on this basis that the formula does not reverse the will's direction to pay taxes from Trust A without proration.

But the Government's characterization of the marital deduction provision is unpersuasive. The Government acknowledges that the decedent executed an integrated estate plan, consisting of a will and two trusts. The very nature of an integrated estate plan demands that the various provisions be considered in conjunction with one another. Therefore, it follows that the significance of the marital deduction property in Trust A be considered in an overall testamentary con-

text. We cannot ignore its implications for the payment of death taxes as directed in the will simply because it is contained in one of the trust documents. In this light, the marital deduction provision appears to be more than a mere definitional formula for Trust A. Rather, it is evidence of the decedent's testamentary plan to minimize the estate tax. Thus, if there is any suggestion in the will that death taxes be paid without proration, that instruction is made ambiguous by the marital deduction provision.

Since the testamentary documents are ambiguous at best, the proration statute applies presumptively. *See In re Estate of Wakefield,* 258 Cal.App.2d 274, 65 Cal.Rptr. 664, 668 (1968) (holding the proration statute applicable due to lack of clarity in will regardless of whether such was the actual intent of the testator). Accordingly, we hold that the amount of the marital deduction claimed by the Estate was proper.[1]

REVERSED.

---

1. This holding makes it unnecessary for this court to address the Estate's alternative argument that it prevails under *Commissioner v. Estate of Hubert,* 520 U.S. 93, 117 S.Ct. 1124, 137 L.Ed.2d 235 (1997). Specifically, the Estate re-

lies on the fact that death taxes were actually paid from the proceeds of an insurance policy owned by the decedent's two sons, rather than from the marital share.